COMMONWEALTH vs. PETER N. BERMENT.

No. 94-P-1908.

Suffolk. September 11, 1995. - December 8, 1995.

Present: KASS, GILLERMAN, & LENK, JJ.

*Search and Seizure*, Arrest, Protective frisk. *Constitutional Law*, Search
and seizure.

At a hearing on a criminal defendant's motion to suppress a gun and am-
munition seized in a *"Terry*-type" stop and frisk by police officers,
there was no evidence that could justify a reasonable suspicion by the
officers that the defendant had been involved in criminal activity or was
the "man waving a gun" as reported to the police in an anonymous
phone call or was armed and dangerous so as to justify a protective
frisk: the defendant's motion to suppress evidence should have been al-
lowed. [525-529] KASS, J., dissenting.

COMPLAINT received and sworn to in the Roxbury Division
of the District Court Department on April 11, 1994.

A pretrial motion to suppress evidence was heard by
*Edward R. Redd*, J., and the case was heard by *R. Peter
Anderson*, J.

*Joan Curran* for the defendant.

*Scott H. Kremer*, Assistant District Attorney, for the
Commonwealth.

GILLERMAN, J. In *Terry* v. *Ohio*, 392 U.S. 1 (1968), the
United States Supreme Court wrote that "[s]treet encounters
between citizens and police officers are incredibly rich in di-
versity." *Id.* at 13. It is that diversity that yields the abun-
dance of "highly fact-based questions," *Commonwealth* v.
*Willis*, 415 Mass. 814, 815 (1993), frequently implicating, as
here, constitutional rights. Based on the particular facts of
the case before us, we conclude that the motion judge should
have allowed, on constitutional grounds, the defendant's mo-
tion to suppress the handgun and ammunition that the police,

after a pat frisk, seized from the defendant without a warrant.

We start with the facts found by the motion judge. The only witness was Officer Clifton Haynes, whose testimony the judge credited. We amplify those findings to include additional facts testified to by Haynes. See *Commonwealth* v. *Willis, supra* at 816-817 (appellate court may supplement findings of trial judge to include findings based on testimony of witness whose credibility judge accepted). The judge's findings are binding in the absence of clear error, and we give particular respect to the judge's conclusions of law, but, because the issue before us is one of constitutional dimensions, the judge's findings of fact and rulings of law "are open for reexamination by this court." *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 384 (1995).

At about 3 A.M. on April 19, 1994, Officer Haynes, in plain clothes, was on duty with his partner. They responded to a radio call about "a man waving a gun" at 11 Mount Pleasant Avenue in the Roxbury section of Boston. The radio call did not include the identity of the person who called the police,[1] nor did the call include a description of the man who was "waving the gun." The only detail given was the address of the alleged activity.

When the police arrived at 11 Mount Pleasant Avenue (the time between the receipt of the report by the police, and the response of Haynes to the radio call, does not appear in the record), they saw, in an adjacent parking lot, three men, one woman, and a motor vehicle. One of the men was sitting in the vehicle on the passenger side; the others were standing around the vehicle. Haynes did not see any criminal activity. There was no shouting or threats, and no one tried to run upon the arrival of the police. The four individuals were "just talking," according to Haynes. No one was waving a gun.

Mount Pleasant Avenue is a working class neighborhood with two-family houses and apartment buildings. Across the street from number eleven was an abandoned house. Haynes

---

[1] The Commonwealth offered no evidence at the suppression hearing regarding the identity of the caller.

had been assigned to the area, including Mount Pleasant Avenue, for the past four and one-half years. During that period, Haynes had made a total of six arrests for drug offenses, none for gun offenses. Haynes did not testify that either he or the Boston police department regarded Mount Pleasant Avenue as a "high crime area," and the judge's finding that it was such an area appears to be unsupported by the record. Contrast such cases as *Commonwealth* v. *Sumerlin*, 393 Mass. 127, 128 (1984), cert. denied, 469 U.S. 1193 (1985) ("Based on prior police work, including investigations of shootings, the officers regarded this section of Boston as a high crime area"); *Commonwealth* v. *Brillante,* 399 Mass. 152, 153 (1987) (area "frequently is the site of illegal activities, including prostitution and drug transactions"); *Commonwealth* v. *Houle,* 35 Mass. App. Ct. 474, 474 (1993) ("area known for prostitution and drug activity").

The officers approached the group and Haynes informed them that they were police officers, and that they had "a call for a gun in this neighborhood. . . ." Haynes first approached the man in the car to "pat frisk" him. The other officer stood by. After frisking the man in the car, Haynes could not remember whether the defendant or the third male was next. When he did approach the defendant, Haynes told him "not to move because I'm going to frisk you right now and not to move."[2] Haynes, whose weapon was not drawn, then began the "pat frisk" of the defendant. The defendant did not move. He did not have his hands in his pockets, contrast *Commonwealth* v. *Fraser*, 410 Mass. 541, 546 (1991), he was not holding a gun, and he submitted to the pat frisk by the officer. The frisk revealed a handgun, with serial number defaced, and live ammunition in the possession of the defendant. The defendant did not have a license to carry the handgun.

Without considering the validity of the stop, the judge ruled that the pat frisk was allowed under *Terry* v. *Ohio, supra,* concluding that the pat frisk was undertaken "as a

---

[2]This statement was volunteered by Haynes during his cross-examination.

precaution for the safety of himself and his partner." In reaching that conclusion he considered the "totality of circumstances," citing *Commonwealth* v. *Fraser*, 410 Mass. at 545.[3] The judge referred to four factors: (1) the encounter was at three o'clock in the morning; (2) the area was a high crime area where six previous drug arrests had occurred; (3) there was a radio call regarding a man waving a gun at 11 Mount Pleasant Avenue in Roxbury; and (4) upon arrival at that address "the officers observed four individuals in the parking lot, one of whom was sitting in the passenger side of a motor vehicle."

*Discussion.* We consider first the threshold question: was there a "*Terry*-type" stop?[4] We conclude that there was such a stop. In *California* v. *Hodari D.*, 499 U.S. 621, 628-629 (1991), the United States Supreme Court held that there is a seizure[5] where, (i) upon a show of authority, a reasonable person would not feel free to leave, but (ii) there is no seizure until the individual in question either submits to that show of authority or is detained physically by the police. See *Commonwealth* v. *Thinh Van Cao*, 419 Mass. at 387. Under art. 14 of the Massachusetts Declaration of Rights, we continue

---

[3]We assume that the judge was referring to the aggregation of facts bearing on the "reasonable suspicion" standard rather than the Federal "totality of the circumstances" standard rejected by the Supreme Judicial Court. See *Commonwealth* v. *Lyons*, 409 Mass. 16, 18 (1990).

[4]The Commonwealth, relying on *Commonwealth* v. *Johnson*, 399 Mass. 14, 15 (1987), argues that the defendant did not challenge the validity of the stop in the trial court, and therefore the issue is not available on appeal. While the defendant's brief argument to the trial judge did not deal in detail with the constitutional issues presented by the stop, the defendant did assert, however briefly, that the seizure of the defendant was a violation of the Fourth Amendment to the Federal Constitution and art. 14 of the Massachusetts Declaration of Rights. In any event, *Johnson* has no bearing on this case; *Johnson* involved a collateral attack on a preceding judgment that had been appealed without raising the issue presented in the motion for a new trial. See *id.* at 15. Thus, even if the defendant did not argue the stop below, we would consider the question under the familiar *Freeman* standard, *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967), and we would reach the same result.

[5]Because all *Terry*-type stops (but not mere police questioning where the subject is free to leave) are seizures, see *Terry* v. *Ohio*, 392 U.S. at 19, we use those terms interchangeably.

to conclude that there has been a seizure in those cases where, under all the circumstances, "a reasonable person would have believed that he was not free to leave." *Ibid.*

The difference between the two standards is not important in this case, for we are of the opinion that there was a seizure under both standards. Officer Haynes told the defendant "not to move," because he was about to be pat-frisked, and the defendant submitted to that show of authority. He did not move, and he was pat-frisked. No reasonable person in those circumstances would have believed he was free to leave, nor would any reasonable person have behaved differently.

The remaining question is whether the stop was justified in the circumstances of this case.[6] More precisely, the issue "we must consider [is] whether the police had a reasonable suspicion, based on specific, articulable facts and reasonable inferences, that the defendant had committed, was committing, or was about to commit a crime." *Commonwealth* v. *Willis*, 415 Mass. at 817. See also *Commonwealth* v. *Moses*, 408 Mass. 136, 140 (1990).

We think not. The Supreme Judicial Court has recently made it clear that, "[w]here the police rely on a police radio call to conduct an investigatory stop, under both Federal and State law, the Commonwealth must present evidence at the hearing on the motion to suppress on the factual basis for the police radio call in order to establish its indicia of reliability." *Commonwealth* v. *Cheek*, 413 Mass. 492, 494-495 (1992). See also *Commonwealth* v. *Willis*, 415 Mass. at 818 ("When the police rely on a transmitted message to conduct an investigatory stop, the Commonwealth must establish its indicia of reliability, both the reliability of the informant and the basis of the informant's knowledge"). No such evidence was presented in this case, and, even if the call were regarded as reliable, there is nothing in the content of the message that suggests that it was the defendant who was involved in criminal activity. There was no evidence regarding

---

[6]Because we conclude that the stop was not justified, we do not reach the issue whether the degree of intrusion was reasonable in the circumstances. See *Commonwealth* v. *Moses*, 408 Mass. 136, 140-141 (1990).

the time the police received the call, the identity of the caller, the circumstances of the call, or the identity or description of the "man waving a gun." The fact that four people were gathered around a motor vehicle at three o'clock in the morning "just talking" does not point either to criminal activity or to the defendant.

Even if we add that the talk occurred in an area where there had previously been drug arrests, the result does not change. See *Commonwealth* v. *Cheek*, 413 Mass. at 496 (the fact that the defendant was observed in a high crime area "contributes nothing to the officers' ability to distinguish the defendant from any other black male in the Grove Hall section of Roxbury. There was no suspicious activity of the defendant observed by the police").

Contrast such cases as *Commonwealth* v. *Anderson*, 366 Mass. 394 (1974), where the details of the anonymous tip and its corroboration by the police justified the stop. See also the discussion of *Anderson* in *Commonwealth* v. *Lyons*, 409 Mass. 16, 19-20 (1990). In *Lyons*, the court held that the police did not have sufficient articulable facts for an investigatory stop where the corroboration of the details of the tip "went only to obvious details, not nonobvious details," and where the defendants "displayed no suspicious behavior." *Id.* at .21. "Anyone can telephone the police for any reason," the court observed. *Ibid.* Contrast *Commonwealth* v. *Crowley*, 29 Mass. App. Ct. 1, 4 (1990), where, a few minutes after a reported bank robbery, the defendant was the sole person seen running from the location close to the bank), and *Commonwealth* v. *Alvarado*, 38 Mass. App. Ct. 650, 653, further appellate review granted, 421 Mass. 1103 (1995) (anonymous tip bore adequate indicia of reliability).

In sum, there was no evidence that could justify a reasonable suspicion that the defendant was involved in criminal activity, or that he was the "man waving a gun." This investigatory stop of the defendant violated the defendant's constitutional rights.

The Commonwealth does no better if we put the stop to one side (as did the judge), and consider only the pat frisk,[7] as in *Commonwealth* v. *Fraser,* 410 Mass. at 545-547. To justify the pat frisk for weapons, the Commonwealth must show that Haynes reasonably believed that the defendant was armed and dangerous. *Terry* v. *Ohio,* 392 U.S. at 27. *Adams* v. *Williams,* 407 U.S. 143, 146 (1972) ("The purpose of this limited search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence . . . . So long as the officer is entitled to make a forcible stop, [footnote omitted] and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose"). *Commonwealth* v. *Fraser,* 410 Mass. at 544. *Commonwealth* v. *Wing Ng,* 420 Mass. 236, 237 (1995). Smith, Criminal Practice and Procedure § 307 (2d ed. 1983 & Supp. 1995).[8, 9] The standard is an objective one. *Terry* v. *Ohio,* 392 U.S. at 26-27.

*Commonwealth* v. *Fraser, supra,* upon which the Commonwealth relies, is distinguishable. In *Fraser,* the court first observed that "the record is barren of evidence indicating that the officer responsible for issuing the radio call had sufficient information to justify a *Terry*-type frisk, or indeed that

---

[7]For the reasons given in the text, the four factors cited by the judge (the time of the encounter was three o'clock in the morning; the area was a high crime area; there was a radio call regarding a man waving a gun at 11 Mount Pleasant Avenue; upon arrival at the scene, the officers saw four individuals, one of whom was sitting in the passenger side of a motor vehicle), either singly or collectively, were insufficient to justify a reasonable suspicion that the defendant was armed and dangerous.

[8]The Commonwealth's brief makes no attempt to argue that the circumstances of this case provided the police with a reasonable basis for suspecting that the defendant was armed and dangerous. The Commonwealth argues merely that the pat frisk was "a reasonable and prudent safety precaution." As *Terry,* 392 U.S. at 27, points out, the protective search for weapons is justified only where the officer has reason to believe that he is dealing with an armed and dangerous individual. We do not apply the diluted standard upon which the Commonwealth relies.

[9]The result we reach regarding the stop and pat frisk is required by both the Fourth Amendment and art. 14, the requirements of both provisions being the same. See *Commonwealth* v. *Rivera,* 33 Mass. App. Ct. 311, 314 n.2 (1992).

he had any reliable information about the defendant at all." 410 Mass. at 546. Thus, absent other factors, the radio call could not justify the stop. The court then assembled the following additional facts to justify the stop: the officer, at a location he knew to be within a high crime area, "saw the defendant bend down behind a truck in a manner suggesting that he might be picking something up or putting something down, and then the defendant confronted the officer with his hands in his pockets." *Ibid.* The record in this case is barren of any evidence of any furtive movement by the defendant or his companions. Specifically, we note that nothing in the defendant's behavior during the pat frisk of the group led the officers to suspect that he was concealing a gun.

For the reasons recited above, the evidence in this case did not provide any basis for a reasonable suspicion that this defendant, who did not flee, act furtively, or remonstrate in any way, but who was just talking with his companions, was armed and dangerous. The protective frisk in this case cannot be justified. To conclude otherwise would "encourage unduly intrusive police practices." *Commonwealth* v. *Cheek*, 413 Mass. at 497.

Following the denial of the motion to suppress, the defendant was convicted in a jury-waived trial of firearms violations. The judgments relating to those convictions are reversed, and the findings are set aside. In addition, the order denying the motion to suppress is vacated. An order shall be entered allowing the motion to suppress. The case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

KASS, J. (dissenting). To be sure, courts must take care that the Fourth Amendment to the Federal Constitution does not become a casualty of the war on crime. It is equally a mistake, however, to blind ourselves to the setting in which a search occurs. The Fourth Amendment is concerned with the

right of "the people to be secure in their persons . . . against *unreasonable* searches and seizures" (emphasis supplied).

In the early hours of the morning, two police officers are asked by radio dispatch to respond to a report of a man waving a gun at 11 Mount Pleasant Avenue, Roxbury, a section of the city where any moderately alert observer of the daily press and electronic media knows shootings have occurred — sometimes on slight or no provocation — with tragic frequency. "All others can see and understand this. How can we properly shut our minds to it?" *Child Labor Tax Case,* 259 U.S. 20, 37 (1922).

At precisely the location identified in the radio dispatch, at about 3 A.M., the officers see four persons. In that regard the case stands altogether distinct from *Commonwealth* v. *Cheek,* 413 Mass. 492, 493 (1992), in which a man walking on the street was stopped and searched one-half mile away from the reported stabbing. Would society not hold the officers severely to account if they did not question those four persons and, thereafter, someone were shot? In the circumstances (report of gun waved, plus early morning, plus area where shootings are too common), ought not the police pat down the persons to be questioned? Is not the situation described one in which the police officers face palpable risk of response "that the answer might be a bullet?" *Terry* v. *Ohio,* 392 U.S. 1, 33 (1968) (Harlan, J., concurring). It seems to me the answer to all three rhetorical questions is "yes," and that, therefore, the limited invasion of the defendant's person was reasonable. See *Commonwealth* v. *Moses,* 408 Mass. 136, 140-142 (1990); *Commonwealth* v. *Willis,* 415 Mass. 814, 817-820 (1993).