COMMONWEALTH *vs.* PIERRE P., a juvenile.

No. 00-P-883.

Hampden. August 17, 2001. - November 9, 2001.

Present: BROWN, PORADA, & LAURENCE, JJ.

*Practice, Criminal,* Motion to suppress. *Search and Seizure,* Protective frisk. *Constitutional Law,* Search and seizure. *Delinquent Child. Loitering.*

The record on a motion to suppress evidence seized from a "pat frisk" did not support the motion judge's conclusion that a police officer's stop of a group of young men was justified on the basis that the officer personally observed the youths standing in front of a store, allegedly in violation of a city's loitering statute, where there was no evidence that the youths were obstructing, hindering, or preventing others from passing by, as required by the ordinance; consequently, where the Commonwealth's case at trial against the juvenile defendant would have been lacking in essential proof without the suppressed evidence, the judgment of delinquency against the juvenile was reversed. [217-219]

COMPLAINT received and sworn to in the Springfield Division of the Juvenile Court Department on August 1, 1997.

A pretrial motion to suppress evidence was heard by *Rebekah J. Crampton,* J., and the case was heard by *Patricia M. Dunbar,* J.

*Kenneth I. Seiger* for the defendant.

*Lisa A. Szulborski (Jane Davidson Montori,* Assistant District Attorney, with her) for the Commonwealth.

BROWN, J. The juvenile was charged with carrying a dangerous weapon, a double-edged knife, and was adjudged delinquent. On appeal he contests the denial of his motion to suppress evidence seized from a "pat frisk." Because the officers were not justified in stopping the juvenile, we reverse the judgment of delinquency.

In reviewing the denial of the defendant's motion, we accept the motion judge's findings of fact absent clear error. *Com-*

*monwealth* v. *Selby*, 420 Mass. 656, 657 (1995). "However, the judge's ultimate findings and conclusions of law, especially those of constitutional dimensions, are open to independent review on appeal." *Ibid.* See *Commonwealth* v. *Berment*, 39 Mass. App. Ct. 522, 523 (1995); *Commonwealth* v. *Badore*, 47 Mass. App. Ct. 600, 601 (1999).

The motion judge found the following facts. On July 31, 1997, Springfield police had received phone complaints that alleged gang members were congregating on Main Street in the North End section of Springfield. Officer James Crogin, a member of the gang suppression unit, drove to the location at 11:00 P.M. The juvenile was with five to eight other youths. Several of the youths, including the juvenile, were wearing black and yellow clothing, which Officer Crogin knew to be the colors of the Latin Kings gang. Officer Crogin recognized one of the youths (not the defendant) as a member of the Latin Kings. Officer Crogin, accompanied by two other officers, approached the youths, with the intent of telling them to move along and to alert them that they were violating the Springfield loitering ordinance. However, before he did this, he "pat frisked" each member of the group.

The officer testified that, although he did not observe any furtive movements or apparently suspicious activity other than the loitering, he searched them out of fear for his safety. The factors he cited were (1) the lateness of the hour, (2) the large number of youths, (3) the place where he encountered the youths was a high crime area, and (4) several of the youths wore gang colors, and one was known to be a member of the Latin Kings, a violent gang. In the search, the officer found the knife on the juvenile. Based on these findings, the judge found that the stop was valid because the officer personally observed the young men standing in front of a store, allegedly in violation of the loitering ordinance. The judge went on to quote from the Springfield loitering ordinance,[1] which had not been offered in evidence. The judge, listing the factors set out above, and plac-

---

[1]The judge wrote, "The Springfield loitering ordinance, 8.244.020(A) states in relevant part that '[n]o person shall congregate, stand, loaf or loiter upon any street, sidewalk, bridge or crossing *so as to obstruct the same, hinder or prevent persons passing or attempting or desiring to pass thereon.*' Section

ing reliance on *Commonwealth* v. *Heon*, 44 Mass. App. Ct. 254 (1998), concluded that there was sufficient evidentiary support for finding that the pat frisk was permissible due to concern for the officer's safety.

The judge below and the parties on appeal have assumed that the frisk of the juvenile's person was preceded by a forcible stop. We note that the somewhat sparse factual record here lends itself to an alternate interpretation: that there was no stop or seizure of the juvenile prior to the moment the police frisked him. Cf. *Commonwealth* v. *Fraser*, 410 Mass. 541, 544 n.4 (1991) (pat-down of defendant was not preceded by a forcible stop where officer simply patted down the defendant in the course of a nonseizure field investigation).

A police officer may frisk a person with whom he necessarily comes into contact if he reasonably considers that person to be dangerous. *Ibid.* See *Commonwealth* v. *Johnson*, 36 Mass. App. Ct. 336, 338 (1994); 4 LaFave, Search & Seizure § 9.5(a), at 247 (3d ed. 1996). However, the Commonwealth could not have invoked this rule here. Nothing in the record before us suggests that, in simply dispersing the group of which the defendant was a part, there was a need for Officer Crogin to come into close contact with the defendant, or any other member of the group. Contrast *Commonwealth* v. *Fraser*, 410 Mass. at 544 n.4 (where officer had duty to investigate report of an armed man, officer's proximity to the defendant was justified). Thus, even if the defendant was not seized prior to the frisk, the frisk itself cannot be justified and the knife should have been suppressed.

If we accept the analytical framework adopted by the parties and the motion judge, that is, that there *was* a stop here prior to the frisk of the defendant, the Commonwealth fares no better.

8.244.020(B) states in relevant part that '[n]o person shall congregate . . . in front of any . . . office building, store, shop . . . *so as to obstruct the same, hinder or prevent persons walking along or into or out of the same or attempting or desiring to do so.*' The ordinance requires an officer to, 'by direct demand, first afford[] such person an opportunity to cease or explain such conduct' before arresting him or her. 8.24.030 (A)." (Emphases added.)

This ordinance was not entered in evidence, and the Commonwealth concedes that municipal ordinances are not subject to judicial notice. See *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 8 (1981); *Commonwealth* v. *Perretti*, 20 Mass. App. Ct. 36, 40 (1985).

To justify the stop, the officers must have had "a reasonable suspicion, based on specific, articulable facts and reasonable inferences, that the defendant had committed, was committing, or was about to commit a crime." *Commonwealth* v. *Berment*, 39 Mass. App. Ct. at 526, quoting from *Commonwealth* v. *Willis*, 415 Mass. 814, 817 (1993).

We hold that the record does not support the judge's conclusion that the stop was justified. The judge's ruling was based on the officer's having personally witnessed the juvenile and his companions allegedly committing the crime of violating the loitering ordinance.[2] However, there was no evidence that the youths were obstructing, hindering, or preventing others from passing by, as required by the ordinance. "Prima facie, mere sauntering or loitering on a public way is lawful and the right of any man, woman, or child." *Commonwealth* v. *Carpenter*, 325 Mass. 519, 521 (1950). The officer's suspicion of a crime being committed was unreasonable and not based on articulable facts. Pursuant to the ordinance, all that should have occurred was a request by the officer to move along.

Even though the officer was instructed by his supervisor to pay special attention to the North End because some residents and business owners complained of groups of alleged gang members hanging out on the streets and sidewalks in front of their buildings and shops, he testified that he was not responding to a particular call or disruption that evening, and that this was the third or fourth group that he had encountered that evening. There was testimony that, even before the officer searched the individuals of the group, he inquired why they were there, to which he was told that one of the individuals in the group lived in the building in front of which they were standing, and that they were waiting for the juvenile's girlfriend, who lived there as well. "To permit police investigative stops under the sparse facts present in this case would be to encourage unduly intrusive police practices. The problems that may

---

[2]The motion judge found that the constitutionality of the ordinance was not relevant to the issue of justification for the initial stop pursuant to *Terry* v. *Ohio*, 392 U.S. 1 (1968). The validity of the ordinance itself is not challenged on appeal. As to such a challenge, see *Commonwealth* v. *Carpenter*, 325 Mass. 519 (1950); *Commonwealth* v. *Williams*, 395 Mass. 302 (1985).

face the . . . 'high crime area' will not be resolved any more readily by excluding the individuals who live there from the protections afforded by our Constitution.'' *Commonwealth* v. *Cheek*, 413 Mass. 492, 497 (1992).

We reverse the order denying the motion. Without the suppressed evidence, the Commonwealth's case at trial would have been lacking in essential proof. The judgment of delinquency is therefore reversed, and judgment shall enter for the juvenile. See *Commonwealth* v. *Badore*, 47 Mass. App. Ct. 600, 604 (1999).

*So ordered.*