COMMONWEALTH *vs.* YASMANI QUEZADA.

No. 05-P-1628.

Suffolk. June 5, 2006. - November 2, 2006.

Present: DUFFLY, CYPHER, & KATZMANN, JJ.

Further appellate review granted, 448 Mass. 1102 (2007).

*Firearms. Constitutional Law,* Search and seizure. *Search and Seizure,* Emergency, Reasonable suspicion.

The judge hearing a criminal defendant's motion to suppress evidence properly concluded that under the circumstances of the case, the defendant's flight from police officers was a nonverbal response to one officer that the defendant was not in need of assistance, and that the action of the police in chasing him did not come within the community caretaking function [695-696]; further, the judge properly concluded that there was no reasonable suspicion for the stop [696-697].

COMPLAINT received and sworn to in the Charlestown Division of the Boston Municipal Court Department on August 26, 2004.

A pretrial motion to suppress evidence was heard by *Anthony P. Sullivan,* J.

An application for leave to prosecute an interlocutory appeal was allowed in the Supreme Judicial Court for the county of Suffolk by *Martha B. Sosman,* J., and the case was reported by her to the Appeals Court.

*Timothy M. Pomarole,* Assistant District Attorney, for the Commonwealth.

*Frances A. King* for the defendant.

CYPHER, J. The defendant, Yasmani Quezada, was charged with unlawful possession of a firearm, G. L. c. 269, § 10(*a*), after a police officer stopped him on the street. The Commonwealth appeals from the allowance of a motion to suppress, claiming that the motion judge erred in concluding that the community caretaking exception did not apply and that there was no reasonable suspicion for the stop. We affirm.

*Background.* The judge credited the testimony of the one witness at the hearing on the motion to suppress, Officer Timothy Horan. Horan testified that on August 25, 2004, at around 1:10 P.M., he and Officer Paul Wright were on patrol in the Charlestown section of Boston, in plain clothes and driving an unmarked vehicle. While driving in the area of 138 Medford Street, a high crime area where Horan had made hundreds of arrests, they stopped their vehicle to permit two pedestrians to cross the street.

One of the pedestrians, the defendant, had a bandage on his forehead and was being assisted by the other pedestrian, whom the officers recognized as Billy Schofield. The officers knew that Schofield had just been released from prison. It took an unusually long time for the two men to cross the street as the defendant was staggering. The defendant appeared to be "out of it" and "not fully aware of his surroundings."

After the defendant and Schofield crossed the street, the officers pulled over and walked toward the two men. Horan gestured to them and asked if he could speak with them for a second. Horan did not display a badge and did not identify himself as a police officer. The defendant turned, looked at Horan, and then ran away down Medford Street.

Horan chased the defendant and yelled "stop." He chased the defendant because he thought he might have "gotten out of a psych facility" and he "wanted to talk to him to see if he'd been the victim of a violent crime or had been involved in a crime, or maybe was overdosing on some drugs, like angel dust which would impair his judgment, maybe cause him to run and fight or whatever, any number of things." Horan caught up with the defendant and grabbed him. They fell to the ground. The defendant said, "it's not my gun; it's not my gun." Horan handcuffed and searched the defendant, recovering a firearm.

*Discussion.* Assessment of witness credibility is within the province of the motion judge. See *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 743 (1990), and cases cited; *Commonwealth* v. *Gutierrez,* 26 Mass. App. Ct. 42, 47 (1988). "We accept the judge's subsidiary findings absent clear error but conduct an independent review of his ultimate findings and conclusions of law." *Commonwealth* v. *Jimenez,* 438 Mass. 213,

218 (2002). "[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996).

a. *Community caretaking function.* The motion judge concluded that the flight of the defendant was a nonverbal response to the officer that the defendant was not in need of assistance and that the action of the police did not come within the community caretaking function. We agree.

The community caretaking function "applies when the purpose of the police [intrusion] is not to gather evidence of criminal activity but rather, because of an emergency, to respond to an immediate need for assistance for the protection of life or property." *Commonwealth* v. *Bates*, 28 Mass. App. Ct. 217, 219 & n.2 (1990). Even though the defendant appeared impaired and possibly injured, he was being assisted by another person. Certainly the police would have been warranted in offering aid, but in these circumstances, chasing the defendant and ordering him to stop went beyond the scope of the community caretaking function. Contrast *Commonwealth* v. *Murdough*, 428 Mass. 760, 762 (1999) (police officers acted reasonably in asking defendant to get out of vehicle because they were "concerned about his condition" and they "thought that the defendant might have been on a narcotics bender and fresh air might do him good," quoting from *Commonwealth* v. *Murdough*, 44 Mass. App. Ct. 736, 738 [1998]). Here, the defendant was not operating a motor vehicle, which could, in his condition, have posed a potential danger to the public. Contrast *Commonwealth* v. *Evans*, 436 Mass. 369, 372-373 (2002) (police may ask whether driver of automobile parked in breakdown lane with blinker flashing needs assistance). See generally *Commonwealth* v. *Brinson*, 440 Mass. 609, 615 (2003).

Nor was this a proper exercise of police power, as the Commonwealth argues, under the protective custody statute, G. L. c. 111B, § 8, which provides, among other provisions, that the police may temporarily detain people and determine whether they are intoxicated. The authority of the police to act under c. 111B, § 8, is limited to persons incapacitated by alcohol who are "(1) unconscious, (2) in need of medical attention, (3) likely

to suffer or cause physical harm or damage property, or (4) disorderly." G. L. c. 111B, § 3, as inserted by St. 1971, c. 1076, § 2. "The reasonable suspicion standard is . . . appropriate to G. L. c. 111B, § 8, the protective custody statute." *Commonwealth* v. *McCaffery*, 49 Mass. App. Ct. 713, 716 (2000). There is nothing in the record to indicate that Horan was aware of sufficient facts to support a belief that the defendant was incapacitated due to alcohol within the meaning of the statute. To the extent there may be a gap in the statute because it only pertains to incapacity due to alcohol consumption, it is for the Legislature to enact a statute that provides for protective custody of persons incapacitated from the ingestion of drugs or for other reasons.

b. *Reasonable suspicion.* The motion judge ruled as matter of law, and we agree, that a seizure occurred when Officer Horan chased the defendant and yelled "stop." See *Commonwealth* v. *Stoute*, 422 Mass. 782, 788-789 (1996). In support of its claim that Horan had reasonable suspicion to stop the defendant, the Commonwealth relies on the following factors: (1) the defendant fled from Horan; (2) the defendant was with a person known to recently have been released from prison; (3) the defendant's manner and demeanor suggested that he was possibly under the influence of narcotics which, in turn, supported an inference that the defendant may have possessed other, not yet ingested narcotics; and (4) they were in a high crime area.

The Commonwealth recognizes that none of these factors taken in isolation is adequate, but argues that the combination of the four factors rises to the level of reasonable suspicion. See *Commonwealth* v. *Fraser*, 410 Mass. 541, 545 (1991) (combination of factors, each of which is alone innocuous, may, when taken together, amount to requisite reasonable belief). We conclude, as did the motion judge, that the officers did not have reasonable suspicion for a threshold stop.

Reaction to the police or "attempt to avoid contact with" the police may be considered, along with other factors, when assessing whether there is reasonable suspicion. *Commonwealth* v. *Wren*, 391 Mass. 705, 708 n.2 (1984). However, where there is no basis for initiating a stop, the defendant's flight cannot be considered in determining whether reasonable suspicion existed

for the stop in the first place. *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981).

Reasonable suspicion must, therefore, be established by the remaining three factors. That the defendant was with a person known to have recently been released from prison does not provide any weight to the Commonwealth's analysis in this case. Compare *Commonwealth* v. *Heon*, 44 Mass. App. Ct. 254, 256 (1998) (membership in group which is not outlawed cannot provide sole basis for officer to conduct *Terry*-type[1] search). That the defendant and Schofield were in a high crime area does not provide justification here. Compare *Commonwealth* v. *Pierre P.*, 53 Mass. App. Ct. 215, 218-219 (2001) (stop and frisk not justified based on membership in gang, even in high crime area). Indeed, "this factor [a high crime area] must be considered with some caution because many honest, law-abiding citizens live and work in high-crime areas. Those citizens are entitled to the protections of the Federal and State Constitutions, despite the character of the area." *Commonwealth* v. *Holley*, 52 Mass. App. Ct. 659, 663 (2001).

When the combined factors are considered, we are unpersuaded that the defendant's manner and demeanor provided an objective factual basis for a reasonable suspicion that the defendant was engaged in criminal activity. Nothing in Horan's testimony supports a conclusion that the officers had reasonable suspicion that the defendant had committed, was committing, or was about to commit a crime. See *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). The Commonwealth's argument that the officers' concern that the defendant appeared to be intoxicated by "angel dust" and that he therefore might be in possession of the drug amounts to nothing more than speculation.

*Order allowing motion to suppress affirmed.*

---

[1] *Terry* v. *Ohio*, 392 U.S. 1 (1968).