Lowy, David A., J.
The defendant, Kyle Rucker (“Rucker”), is charged with possession of a firearm under G.L.c. 269, §10G, and possession of ammunition under G.L.c. 269, §10(h). He now moves to suppress the firearm found on his person during a pat-frisk search, arguing that the police lacked reasonable suspicion to believe that he was involved in criminal activity or that he was armed and dangerous. After hearing, and based upon the findings of fact and conclusions of law discussed below, the defendant’s motion to suppress is DENIED.
FINDINGS OF FACT
At approximately one o’clock in the afternoon on February 14, 2006, Officer Michael DiMeglio (“Officer DiMeglio”) of the Lynn Police Department was working at the police station when he heard a call over his police radio from Officer John Dean (“Officer Dean”) that two shots had been fired in the downtown area of Lynn. Shortly thereafter, Sgt. Peter Holey (“Sgt. Holey”), also of the Lynn Police Department, radioed that he had heard two shots from the direction of Broad Street in downtown Lynn. This area of Lynn is, for the most part, a commercial area; there are, for example, a Walgreens, a Chinese restaurant, a wireless cell phone store, and a social security office in the immediate vicinity. The court credits Officer DiMeglio’s testimony that it is a high crime area, where he has made a number of arrests for violent offenses in the past. Officer Dean and Sgt. Holey (collectively “the reporting officers”) had only heard the gun shots, and, therefore, could not provide a description of any possible suspects. Officer DiMeglio, who was dressed in uniform at the time, left the police station and entered his cruiser to investigate the report. The police station is not located far from the area where the shots had been fired, so Officer DiMeglio arrived relatively quickly to the general vicinity. As Officer DiMeglio was driving down Union Street, near where the reporting officers believed the shots had been fired, he saw an individual, Jason Welch (“Welch”), who he knew was under indictment for killing a woman in a nearby house, walking down the sidewalk with Rucker.
Officer DiMeglio estimated that there were between twenty and fifty people near where Welch and Rucker were walking. After Officer DiMeglio saw Welch, he turned on his police lights, made a U-turn, and drove back along Union Street. He pulled his cruiser diago *719 nally into a parking spot next to Welch and Rucker, radioed to dispatch that he was exiting the cruiser to question two individuals on foot, and asked Rucker and Welch to “hold up for a second.” Welch stopped, but Rucker asked if he was all set to go. Officer DiMeglio told him that he was not free to leave, and he ordered them to take their hands out of their jacket pockets, and to put them on the wall of the nearby Chinese restaurant. Initially, they both complied; shortly after placing his hands on the wall, however, Rucker began to move his hands back toward his jacket pocket. Officer DiMeglio ordered Rucker to put both of his hands back on the wall, and he began to unholster his sidearm. When Rucker complied, Officer DiMeglio kept his sidearm in the holster.
At this point, Officer O’Connell, also of the Lynn Police Department, arrived on the scene. He was on patrol nearby and had been dispatched to investigate the report of shots fired. In addition to the information that Officer DiMeglio had heard over the police radio, Officer O’Connell heard a later transmission from Officer Haggarty that a meter maid had told him that the shots were fired around Greene Street.[1] When he heard over the radio that Officer DiMeglio was out of his cruiser and with two suspects, he drove to assist him. After Officer O’Connell arrived, Officer DiMeglio frisked Welch, while Officer O’Connell frisked Rucker. Officer O’Connell found a handgun in Rucker’s front pocket, but Officer DiMeglio did not find a weapon on Welch. The officers then placed Rucker under arrest.
DISCUSSION
The defendant asserts that this court must suppress the firearm found by the police while conducting a pat-frisk search of his person because the officers did not have either probable cause or a reasonable and articulable suspicion to believe that he was involved in any criminal activity.
I. Reasonable Suspicion to Detain for Criminal Activity
Police may stop individuals on the street, absent probable cause to make an arrest, if they reasonably believe that the individuals may be involved in criminal activfiy, and they may conduct a limited pat-frisk search for weapons if they believe them to be armed and dangerous. See Terry v. Ohio, 392 U.S. 1, 30 (1968). Thus, a police officer may pat-frisk an individual if there are specific facts justifying a reasonable inference that would warrant a prudent person in believing that his or her safety, or the safety of others, is in danger. See id. at 27. The degree of intrusion into the individuals’ liberty interest must also be proportionate in time, space, and force to the degree of suspicion that warranted the intrusion. See Commonwealth v. Borges, 395 Mass. 788, 794 (1985).
Here, Officer DiMeglio seized Rucker when he got out of his cruiser and told him that he was not free to leave. See United States v. Mendenhall, 446 U.S. 544, 552 (1980) (holding that an individual is seized when, by a show of authority, an officer restrains their liberty); see also Commonwealth v. Stoute, 422 Mass. 782, 786 (1996). Thus, the Commonwealth must justify this intrusion of Rucker’s liberty interest. See Terry, 392 U.S. at 19. In this case, Rucker and Welch were walking together, in a high crime area, in the vicinity where shots had been fired, and Officer DiMeglio recognized Welch as being under indictment for shooting a woman who lived nearby. On these facts, the officer had reasonable suspicion to detain Welch under Terry. See Stoute, 422 Mass. at 791; see also Commonwealth v. Dasilva, 66 Mass.App.Ct. 556, 560 (2006) (noting that the knowledge of the defendant’s criminal reputation is an important element to justify an investigatory stop); Commonwealth v. Grinkley, 44 Mass.App.Ct. 62, 74 (1997).[2] At the time of the seizure, however, Officer DiMeglio knew nothing of Rucker, other than that he was walking down the sidewalk with Welch. He did not have a description of a possible suspect, was unaware of any criminal history of the defendant, and, therefore, he did not have reasonable suspicion to believe that Rucker was involved in the shooting. See Commonwealth v. Quezada, 67 Mass.App.Ct. 693, 697 (2006); Commonwealth v. Dasilva, 56 Mass.App.Ct. 220, 226-28 (2002). Thus, if the firearm is to be admitted as the fruit of a lawful pat-frisk, the Commonwealth must rely on exigent circumstances. See Commonwealth v. Foster, 48 Mass.App.Ct. 671, 673-75 (2000) (citing cases).
II. Pat-Frisk of an Individual who Might be Armed and Dangerous
Police may detain and pat-frisk individuals, even without reasonable and articulable suspicion of criminal activity, if certain exigent circumstances exist. See Commonwealth v. DePeiza, 66 Mass.App.Ct. 398, 407 (2006) (noting that “(p)olice officers have a duty to investigate potential dangers to the public; and an investigating officer who comes into proximity with the defendant need not place his safety at risk”); see also Foster, 48 Mass.App.Ct. at 673-75 (2000). An inchoate hunch, however, that is not supported by particularized facts, is not enough to justify a seizure. See Terry, 392 U.S. at 27; DePeiza, 66 Mass.App.Ct. at 407. For example, when executing an arrest warrant, officers may frisk people in the general vicinity if they have reason to believe that a particular person may be armed and dangerous. See Commonwealth v. Wing Ng, 420 Mass. 236, 237-38 (1995) (holding that officers could reasonably believe that the brother of a dangerous suspect they were arresting, who was a passenger in a car that the suspect was driving, could be armed and dangerous).[3] During a routine traffic stop, an officer may also order occupants to get out of the car if the officer has a reasonable belief that the situation is dangerous. See Commonwealth v. Gonzalves, 429 Mass. 658, 662-63 (1999). The officers may not, however, turn such a narrow protective sweep into a *720 generalized search for weapons or contraband. See Ybarra v. Illinois, 444 U.S. 85, 94 (1979) (holding that police executing a search warrant in a bar could not permissibly pat-frisk patrons when they did not have a reasonable belief that their safety was in danger). Thus, as the Appeals Court has recently reaffirmed, “[a] police officer may stop and frisk an individual for the officer’s own safety and the safety of others if the circumstances reasonably suggest that the person is armed and potentially dangerous.” Commonwealth v. Nester N., 67 Mass.App.Ct. 225, 229-30 (2006).
In determining whether a particular seizure is reasonable, the court must balance “the intrusion on the individual’s Fourth Amendment interests against. . . [the] promotion of legitimate governmental interests.” Maryland v. Buie, 494 U.S. 325, 331 (1990). Massachusetts courts look at the totality of the circumstances when determining whether an officer has a reasonable belief that a defendant is armed and dangerous, thereby justifying a protective frisk. See Commonwealth v. Fisher, 54 Mass.App.Ct. 41, 44 (2002). Such factors include whether there is an imminent danger to the police or the public, the reaction to police presence, furtive movements, the defendant’s presence in a high crime area, police awareness of a suspect’s prior criminal record, and proximity to a crime scene. See generally 4 Wayne R. LaFave, Search and Seizure §§9.5 (f), 9.5(g), at 515-70 (2004); Joseph A. Grasso & Christine M. McEvoy, Suppression Matters Under Massachusetts Law, §§4.3(d)(1)—(8), at 4-33—4-43 (2004-2005). While presence with a suspect independently may not justify a seizure and pat-frisk, when combined with other factors it may provide enough evidence for reasonable suspicion. See Commonwealth v. Calderon, 43 Mass.App.Ct. 228, 230 (1997). In addition, whether a firearm has actually been discharged is an important element for the court to consider when determining if an officer acted reasonably in making an investigatory stop. See Commonwealth v. Doocey, 56 Mass.App.Ct. 550, 557 n.12 (2002). “Particularly when a police officer receives information concerning an individual with a gun, the test for determining reasonable suspicion should include consideration of the possibility of the possession of a gun, and the government’s need for prompt investigation.” Stoute, 422 Mass. at 786 (internal quotation marks omitted). The inquiry, therefore, is “whether the pat-down was supported by a reasonable belief that the defendant was armed and dangerous even though ... the officer may not have had sufficient information to justify an investigative stop under Terry v. Ohio.” Commonwealth v. Fraser, 410 Mass. 541, 544 n.4 (1991)
In Fraser, the officer received a radio call reporting a man in a brown Toyota with a gun in a high crime area. 410 Mass. at 542. When the officer arrived on the scene, he saw a group of men standing on the sidewalk, but no car. Id. The officer witnessed the defendant bend down behind a pickup truck as if to put something down or pick it up. Id. The officer walked up to the defendant, identified himself, and asked him to remove his hands from his pockets. Id. While conducting a pat-frisk of the defendant, the officer found a loaded handgun in his pocket. Id. at 542-43. The SJC held that, “[t]aken together, these circumstances are enough to warrant belief by a ‘reasonably prudent man . . . that his safety or that of others was in danger.’ ” Id. at 546, quoting Terry, 392 U.S. at 27; cf. Calderon, 43 Mass.App.Ct. at 228 (1997) (holding that when officers were arresting the defendant’s girlfriend on an outstanding warrant, and the defendant became agitated, that the officers were justified in pat-frisking the defendant to make sure he was not armed).
By way of contrast, Commonwealth v. Berment 39 Mass.App.Ct. 522 (1995), presented a slightly different factual scenario. In Berment, a police officer responded to a call that an individual was waving a gun around. Id. at 523. There was no testimony that the area was known to the police as high in crime. Id. at 524. When the investigating officer arrived on the scene, he saw one man sitting in the passenger side of a car, and two men and a woman standing outside of it. Id. at 523. The officer approached them, identified himself as a police officer, and when he pat-frisked the defendant, who had been standing outside the car, the officer found a gun in his pocket. Id. at 524. The Appeals Court held that to perform the pat-frisk, however, the officer had ro reasonably believe that the defendant was armed and dangerous, and distinguished the case from Fraser by pointing out that Berment did not have his hands in his pockets, it was not a “high crime area,” and there had been no furtive movements. Id. at 528-29.
As a general rule, when the police detain a suspect under Terry, they may not also automatically stop the suspect’s companion or other bystanders. See Trice v. United States, 849 A.2d 1002, 1004 (D.C. Court of Appeals, 2004). Thus, although “mere presence with a suspect does not furnish a basis for a stop ... an individual’s interaction with a suspect . . . often is a factor in assessing the reasonableness of an officer’s suspicion.” Commonwealth v. Harnois, 57 Mass.App.Ct. 1116, 1119 (2003).[4] For example, when the police lawfully arrest a suspect for a violent crime, they may validly stop and pat-frisk his companion for their own safety, and for the safety of the public. See Wing Ng, 420 Mass. at 241. Therefore, it logically follows that when an officer legitimately comes into contact with the companion of the target of a Terry stop, particularly when the stop is related to a crime of violence or involves firearms, they may frisk the suspect’s companion if they consider him dangerous, even if they do not have reasonable, articulable grounds to stop him for suspicion of criminal activity. See Fraser, 410 Mass. at 544 n.4; Trice, 849 A.2d at 1004.
*721 Here, Officer DiMeglio was faced with the following scenario: He was responding to a reliable report of shots fired in the middle of the day in a busy, commercial section of Lynn, which he knew was a high crime area; on his way to the scene, Officer DiMeglio recognized Welch, who he knew had been involved with firearms in the past and was under indictment for killing a woman in the same area of the city, walking away from the area where shots had been fired, and accompanied by Rucker; in addition, when he confronted Welch and Rucker, they were wearing bulky jackets with their hands in their pockets and the officer was outnumbered. Given these facts, a reasonable officer would legitimately fear not only for his or her own safety, but also for the safety of nearby pedestrians. See Fraser, 410 Mass. at 546; Foster, 48 Mass.App.Ct. at 673 (noting that, “(w)hile the report of possession of a gun alone is not enough, there is a consistent theme in the gun cases and that is, if the police reasonably perceive danger to themselves or to members of the public, they have a duty to investigate, and may perform a patfrisk if they have a reasonable belief that the defendant is armed and dangerous” (internal quotations omitted)). Thus, Officer DiMeglio was not' operating on a hunch that Welch or Rucker might have a firearm as the officers in DePeiza were; he was investigating the report of shots fired. This is the type of emergency contemplated by the court in DePeiza that would have justified the officer’s pat-frisk of the defendant. See 66 Mass.App.Ct. at 407 (holding that officers were operating on a hunch when they approached an individual they thought was walking in a manner that would conceal a firearm, when they were not investigating any particular crime).
The amount of force used by Officer DiMeglio to detain Welch and Rucker was proportionate to the threat he could reasonably perceive, especially considering that he was alone. See Commonwealth v. Andrews, 34 Mass.App.Ct. 324, 329 (1993) (holding that an officer used reasonable force in detaining the defendant and three companions because he had reasonable belief to detain under Terry, when he blocked their vehicle into a driveway, held them at gun point, handcuffed, and pat-frisked them). Even though he did not have a description of the suspect, Officer DiMeglio was still justified in stopping Welch for investigatory purposes, see Fraser, 410 Mass. at 546, and by doing so, he legitimately put himself into the situation where he had to deal with Rucker, Welch’s companion. See DePeiza, 66 Mass.App.Ct. at 407. The SJC has recognized that “having received a report of an armed man, it would have been poor police work had the officer left the scene without making any inquiries.” Fraser, 410 Mass. at 544 n.4. Therefore, Officer DiMeglio was justified in detaining Rucker until backup arrived.
Even though he did not have enough information to stop Rucker for investigatory purposes, at the time of the seizure, the officer could reasonably believe that Rucker was armed and dangerous. In this case, Fraser controls. The only difference in the factual scenario between this case and Fraser is that in Fraser, the defendant bent down as if to put something down or pickitup, a furtive movement. 410 Mass. at 542. Here, Rucker was associating with an individual known by the police to have a history of violence with firearms. Given the transitory nature of firearms, Officer DiMeglio could have reasonably believed that Welch passed off a weapon to Rucker or perhaps stood ready to help him. Cf. Stoute, 422 Mass. at 791. In addition, Officer DiMeglio was investigating a report of shots being fired. The fact that the suspect was actually willing to discharge a weapon is an important consideration when deciding whether the suspect is dangerous so as to justify a pat-frisk. Doocey, 56 Mass.App.Ct. at 558. Rucker was walking with a suspect, who the officer had known to have a violent past in the area, away from a crime scene, in a high crime area, with his hands in the pockets of a bulky jacket. Given this scenario, Officer DiMeglio could reasonably fear, not only for his own safety, but also for the safety of the passers by in a busy commercial district. Accordingly, it was lawful for the officers to search Rucker for weapons. Therefore, the defendant’s motion to suppress the firearm found on his person must be DENIED.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion to suppress the firearm found on his person is DENIED.

The collective knowledge of the officers is relevant to determine whether reasonable suspicion was present to effect a seizure. See Commonwealth v. Gullick, 386 Mass. 278, 283 (1982); Commonwealth v. Andrews, 34 Mass.App.Ct. 324, 327 (1993).

In Commonwealth v. Cheek, the Supreme Judicial Court (“SJC”) held that an officer did not have reasonable suspicion for an investigatory stop when he searched an individual whose jacket matched the description of the suspect, and who was walking away from the scene of a reported stabbing, in a high crime area. 413 Mass. 492, 496 (1992). Cheek is inapposite here, however, because Officer DiMeglio was dealing with an individual, Welch, who he knew had a violent background. This presents a markedly different scenario than when an officer stops an individual unknown to him. The fact that Officer DiMeglio knew Welch is a specific articulable fact, rather than random chance or an inchoate hunch. See Grinkley, 44 Mass.App.Ct. at 74.

The SJC deviated from the bright line rule articulated by the Ninth Circuit in United States v. Berryhill that held that officers can pat-frisk the companion of an arrestee even without reasonable suspicion to believe they may be armed and dangerous. See 445 F.2d 1189, 1193 (1971).

Hamois is an unpublished opinion.