## Commonwealth *vs.* Victor Calderon.

No. 96-P-817.

Middlesex. February 10, 1997. - July 24, 1997.

Present: Brown, Kaplan, & Perretta, JJ.

*Search and Seizure,* Protective frisk, Probable cause. *Constitutional Law,* Search and seizure, Probable cause. *Probable Cause.*

In the circumstances of the execution of an arrest warrant, police officers acted reasonably in ordering the two companions walking with the person named in the warrant to be arrested to stop and to step aside and, further, the officers acted reasonably in pat-frisking the companions when they challenged the officers' right to make the arrest. [230-231]

Police officers investigating a burglary had probable cause to seize jewelry the defendant had produced from his pockets after a lawful pat-frisk that had revealed screwdrivers, pliers and a knife wrapped in a sock in the defendant's breast pocket, where the defendant was in the company of a named suspect in the burglary, where the screwdrivers were consistent with the implement used to break in, where the police knew the defendant had a long record of burglary convictions and where the defendant said "a friend" had "given" him the jewelry. [231]

Indictments found and returned in the Superior Court Department on March 30, 1993.

A pretrial motion to suppress evidence was heard by *Patti B. Saris,* J., and the cases were heard by her.

*Kevin J. Mahoney* for the defendant.

*Geraldine C. Griffin,* Assistant District Attorney, for the Commonwealth.

Perretta, J. After a jury-waived trial, a Superior Court judge found the defendant guilty on indictments charging him with unarmed burglary, possession of burglarious instruments, and larceny of property valued at more than $250. The principal issue raised on appeal is whether jewelry found on the defendant during a "pat-frisk" conducted at the time of the arrest of his companion should have been suppressed. We affirm the convictions.

1. *The facts.* We recite the facts as found by the Superior Court judge following an evidentiary hearing on the defendant's motion to suppress. On the afternoon of January 12, 1993, Framingham police Detective Dolores Coots was investigating a burglary on Second Street. The person who reported the break-in, a relative of the tenant who was on vacation, named Michelle Hollis as a suspect. Hollis was known to the Framingham police department. Coots sought out and spoke with Hollis without incident and then returned to the police station. There she discovered two outstanding default warrants against Hollis based upon drug-related offenses. Coots again left the station in search of Hollis.

It was close to 10 P.M. when Coots found Hollis about one mile from the Second Street burglary in an area known for drug activity. She was walking with her boyfriend, Alex Peres, and the defendant. All three were known to the Framingham police and had criminal records involving drug-related offenses and burglaries. Additionally, the defendant, a heroin addict, had been arrested for a robbery, which Coots mistakenly but in good faith (as found by the judge) believed was an armed robbery. Rather than arrest Hollis while alone, Coots called for assistance. When Officers Bevilacqua and Fuer arrived, they joined with Coots and approached Hollis and her companions.

Bevilacqua testified that in the course of his sixteen years with the Framingham police, the defendant had been in the police station under arrest "probably a couple dozen times." Fuer and Bevilacqua moved Peres and the defendant away from Hollis as Coots approached her. As Coots began to frisk Hollis, Peres and the defendant became "agitated," that is, according to Bevilacqua, "[t]hey were stating that 'you keep bothering us. Why are you arresting her? She didn't do anything wrong.' Statements like that." Fuer then frisked Peres, and Bevilacqua patted down the defendant. In doing so, he felt a hard object in the breast pocket of the defendant's jacket. Bevilacqua asked what it was, and the defendant stated that he was not carrying any weapons. Bevilacqua, believing the object to be a gun, put one hand to his holster while, with the other, he removed the hard object from the defendant's pocket. The hard object was a sock containing two or three screwdrivers, pliers, and a knife. As Bevilacqua was removing the sock, the defendant, fearing Bevilacqua might shoot him, began to empty jewelry from his other pockets while saying, "I don't carry any weapons. Look."

When Coots asked the defendant where he had obtained the jewelry, he replied that someone had given it to him. Coots told the defendant that she was taking the jewelry, and if it was not stolen property, she would return it to him. Hollis was taken into custody, and Peres and the defendant were allowed to leave. Immediately thereafter, Coots received a report of another break-in, on Marion Street, about three-quarters to a mile away from the scene of the encounter with Hollis, Peres, and the defendant. Coots left the scene and took the jewelry to that address. She showed it to the victim who identified it as her property. The defendant was arrested the following afternoon. The defendant's convictions arise out of the Marion Street burglary.

2. *The "pat-frisk."* Because the judge's findings of fact are warranted on the evidence, and the defendant makes no argument that they are tainted by clear error, see *Commonwealth* v. *Clermy*, 421 Mass. 325, 328 (1995), we proceed "to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found. *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990)." *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996).

We think the defendant's arguments, that the police had no basis for either stopping or frisking him, are disposed of by *Commonwealth* v. *Wing Ng*, 420 Mass. 236 (1995). As in *Wing Ng*, "[t]his is not a simple case of the search of the companion of a person who is arrested." *Id.* at 241. The officers had every right to be where they were. See *Commonwealth* v. *Fraser*, 410 Mass. 541, 544-545 n.4 (1991). Coots had default warrants which authorized the arrest of Hollis, but she took no action until Fuer and Bevilacqua arrived on the scene. Bevilacqua testified that he and Fuer came to the scene to protect Coots while she arrested Hollis. Upon their arrival, Coots got out of her car and told Hollis, Peres, and the defendant "to stop walking." The police were well aware of the long criminal history of Hollis and the defendant, which included crimes which bespeak disregard for risk of physical harm to others (burglary and robbery), they knew that Peres was Hollis's boyfriend, it was night, and the arrest, an event which often escalates to violence, was being made in an area known for drug activity. In these circumstances, we conclude that the police acted reasonably in ordering the defendant and Peres as well as Hollis to stop and then moving Peres and the defendant aside while Coots arrested Hollis. See *Pennsylvania* v. *Mimms*, 434 U.S. 106, 111 (1977).

Cf. *Commonwealth* v. *Moses*, 408 Mass. 136, 140 (1990). The "pat-frisk" of the defendant, a minimal intrusion, did not come until after he and Peres became agitated and made statements challenging Coots right to arrest Hollis.

These specific and articulable facts could cause a reasonable police officer to suspect that he or she was in danger, that the defendant might be armed and a threat to his or her safety as well as that of others. See *Commonwealth* v. *Wing Ng*, 37 Mass. App. Ct. 283, 287-288 (1994), *S.C.*, 420 Mass. at 240. The fact that Coots stated that she also wanted to detain the defendant "to make sure there were no warrants for his arrest" does not alter our conclusion. Any additional or ulterior motive Coots may have had in stopping the defendant is not a decisive consideration. See *Commonwealth* v. *Santana*, 420 Mass. 205, 209 (1995).

3. *Seizure of the jewelry.* Although the jewelry was discovered as a result of the defendant's actions and not a search, probable cause was nonetheless required to justify its seizure by Coots. See *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 698-699 (1984). Although the defendant claims that none existed, the following facts establish otherwise.

During her investigation of the break-in on Second Street, Coots saw that the door to the residence had been pried open and that the pry marks were consistent with having been made by a screwdriver. The only item that the tenant's relative could identify as missing was a microwave oven. At the time of the seizure of the jewelry from the defendant, he was in the company of the suspected burglar. When asked where he had obtained the jewelry, the defendant, who had a lengthy record of burglaries, gave the implausible explanation that a friend had given it to him. Importantly, the defendant was carrying in his breast pocket several screwdrivers, pliers, and a knife wrapped in a sock.

That Coots subsequently ascertained that the jewelry in fact came from the Marion Street and not the Second Street break-in is of no consequence. The facts known to Coots at the time of the seizure were more than sufficient to give rise to probable cause to believe that the jewelry was stolen. They also demonstrated a strong likelihood that the jewelry would be lost if not immediately seized. *Commonwealth* v. *Skea*, 18 Mass. App. Ct. at 691.

The defendant's simple assertion, that the defendant's post-arrest statements should have been suppressed because Coots

Commonwealth *v.* Calderon.

seized the jewelry "with no methodology for discovering its owner," consists of no more than a single sentence and warrants no discussion.

*Judgments affirmed.*