COMMONWEALTH *vs.* JOHN D. ROUSSEAU.[1]

No. 02-P-964.

Worcester. October 3, 2003. - May 6, 2004.

Present: ARMSTRONG, C.J., BROWN, PERRETTA, MASON, & BERRY, JJ.

*Breaking and Entering. Possession of Burglarious Instruments. Threshold Police Inquiry. Constitutional Law,* Search and seizure, Reasonable suspicion. *Search and Seizure,* Automobile, Reasonable suspicion, Threshold police inquiry, Consent.

At the trial of indictments arising from two separate incidents (a break-in at a building in a State park and a later motor vehicle stop in a State park, in which tools for use in a burglary were found), evidence that the defendant possessed an item stolen during the break-in, together with circumstantial evidence and reasonable inferences (including evidence relating to the later motor vehicle stop), was sufficient to convict the defendant of breaking and entering in the daytime [145-149] and possession of burglarious instruments [149-152]. BROWN, J., with whom MILLS, J., joined, dissenting.

A Superior Court judge did not err in denying a criminal defendant's motion to suppress evidence recovered during a motor vehicle stop, where the police, who discovered the vehicle in a State park long after closing hours and observed a police duty belt, handcuffs, and a portable radio on the front seat, had sufficient information to later stop the vehicle, in which the defendant and his companion were then traveling; to order them to exit

---

[1]The case was initially heard by a panel comprised of Justices Mason, Berry, and Brown and was thereafter submitted on the record and briefs to Chief Justice Armstrong and Justice Perretta, all of whom took part in the decision of this case, in accordance with the provisions of Mass.R.A.P. 24(a), 365 Mass. 872 (1974). The procedure follows that delineated in *Sciaba Constr. Corp.* v. *Boston,* 35 Mass. App. Ct. 181, 181 n.2 (1993), and the long-standing practice of the Appeals Court, designed to ensure that published opinions reflect the view of a majority of the Justices. As set forth in *Sciaba, supra,* "[i]n the case of a dissent, if a majority of all the Justices agrees with the majority of the panel, the decision is published as a two to one decision of the original panel. If a majority of all the Justices agrees with the dissent, the panel is enlarged to reflect the view of the majority of the court, generally by adding to the panel the two senior Justices who are part of the full court majority." The effect is that the opinion that originally circulated to the court as a dissent becomes, with appropriate revisions, the majority opinion. Conversely, the opinion originally circulated as the majority opinion becomes, as appropriately revised, the dissent.

that vehicle; and to search it [152-153]; further, the judge properly found that the defendant and his companion consented to a search of a compartment in the vehicle, and that the seizure of items from that compartment was lawful [153-155].

INDICTMENTS found and returned in the Superior Court Department on August 18, 2000.

A pretrial motion to suppress evidence was heard by *Timothy S. Hillman*, J., and the cases were heard by *Francis R. Fecteau*, J.

*Karl R.D. Suchecki* for the defendant.

*Anne S. Kennedy*, Assistant District Attorney, for the Commonwealth.

BERRY, J. After a jury-waived trial in the Superior Court, the defendant was convicted of breaking and entering in the daytime and possession of burglarious tools.[2] On appeal, the defendant argues that the evidence was insufficient to sustain the convictions and that the motion judge erred in denying his motion to suppress evidence that was obtained after the vehicle in which he was a passenger was stopped.

1. *Sufficiency of the evidence.* Because the convictions at issue relate to two separate incidents, a break-in at the Metropolitan District Commission (MDC) field office in Oakham State Park and a motor vehicle stop in Douglas State Park in which tools for use in a burglary were found, the incidents and the sufficiency of the evidence supporting each conviction will be discussed seriatim.

a. *Oakham incident.* In connection with the Oakham incident, the defendant was charged with breaking and entering in the daytime and two counts of malicious destruction of property, the first count alleging damage to radios and the second alleging damage to doors and cabinets. At the conclusion of the trial, the judge denied the defendant's motion for required findings of not guilty and entered findings of guilt. The two convictions for

---

[2]The defendant was also convicted of attempting to commit a crime and two counts of the lesser included offense of malicious destruction of property of a value of less than $250. Those convictions were placed on file. An indictment for larceny was dismissed before trial at the request of the Commonwealth.

malicious destruction of property were placed on file. See note 6, *infra.* The defendant was sentenced to two years in a house of correction on the conviction of breaking and entering.

On appeal, the defendant argues that the evidence was insufficient to show that a camcorder recovered from his home on December 13, 1999, was the same one stolen from the MDC office in Oakham (on or about December 5, 1999) and that, because the evidence was insufficient to "prove that [he] stole the camera, it . . . cannot logically follow that he was the person who broke and entered the MDC facility the weekend it was stolen."

We address initially and resolve that part of the defendant's argument that asserts that the evidence was insufficient to show the camcorder found at his home was the same one taken during the break-in. Steven Drawbridge, a supervisor at the MDC office in Oakham, was asked during direct examination whether he had "identified [the camcorder in the possession of the police] as your camcorder that was in that room prior to December 5?" He responded, "Yes." Based on this testimony, a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the camcorder taken from the defendant's home was, indeed, the same camcorder that had been stolen during the break-in at Oakham. See and compare *Commonwealth* v. *James,* 424 Mass. 770, 784-785 (1997).

The question then is whether, taken as a whole, there was sufficient evidence to prove that it was the defendant who committed the breaking and entering at Oakham State Park. Of course, a critical link to the defendant's involvement in the Oakham affair is his possession of the recently stolen camcorder. That possession, in turn, yields inferences recognized in law that the defendant knew the camcorder was stolen and that he was involved in the theft in which it was taken: "[T]he defendant's mere possession of recently stolen property may be relied upon by the jury as evidence that he had stolen it." *Commonwealth* v. *Latney,* 44 Mass. App. Ct. 423, 425 (1998).[3] "[T]he defendant's possession of recently stolen goods permits

---

[3]There is no live dispute that the time lapse between the theft and possession (ten days, at most) satisfies the requirement that the property be

the inference that he is the thief. 'The circumstances as a whole must be looked at.' " *Commonwealth* v. *Dellamano*, 393 Mass. 132, 135 n.7 (1984), quoting from *United States* v. *Canessa*, 534 F.2d 402, 404 (1st Cir. 1976).[4]

Although the dissent seeks to exile to the back stage the defendant's act of possessing, and his knowledge that he was possessing, a thing recently stolen from Oakham, these pivotal pieces of evidence and the inferences that flow from and the circumstantial background surrounding such possession do not stand in such solitude. Rather, the defendant's possession of the stolen camcorder is just one part of, and intricately interwoven into, the full evidentiary setting presented at the joint trial, which included both the Oakham break-in *and* the evidence of the defendant's possession of burglarious tools in connection with an attempt to break-in at the MDC field office at Douglas State Park. "[U]nexplained possession of . . . [the] property [here, the stolen camcorder] tended to implicate the defendant in the taking and 'was competent, not [exclusively] on the ground, as the defendant supposes, of its being proof of possession of stolen property, but upon the broader and more general principle of being a material and relevant fact to the point in is-

"recently" stolen. See *Commonwealth* v. *Kirkpatrick*, 26 Mass. App. Ct. 595, 600-602 (1988).

[4]The evidentiary principle applied in *Dellamano* and *Latney* is long standing. See, e.g., *Commonwealth* v. *Grace*, 265 Mass. 119 (1928), in which the court stated:

> "The judge instructed the jury in substance that if the personal property of one person is found in the possession of another and the latter offers no explanation as to his possession thereof, there is a presumption that he stole it, but that the presumption is one of fact and not of law. This instruction was correct. It is settled that the possession of stolen property by one soon after the theft, if no explanation or an unsatisfactory account of it is given, is presumptive evidence of guilt."

*Id.* at 123-124, citing *Commonwealth* v. *McGorty*, 114 Mass. 299 (1873); *Commonwealth* v. *Deegan*, 138 Mass. 182 (1884); *Commonwealth* v. *Williams*, 161 Mass. 442 (1894); *Commonwealth* v. *Taylor*, 210 Mass. 443 (1912). The dissent seeks to submerge these long established principles under what the dissent describes as the piling of inferences upon inferences. Here, if there be any pilings, they are embedded in firm legal ground and solidly constructed, as noted in *Dellamano*, from "the circumstances as a whole" and, as so massed, provide a sufficiently strong evidentiary structure to withstand a motion for a required finding of not guilty.

sue before the [trier of fact].' " *Commonwealth* v. *Ross*, 339
Mass. 428, 432 (1959), quoting from *Boston & Worcester R.R.
Corp.* v. *Dana*, 1 Gray 83, 102-103 (1854). See *Commonwealth*
v. *Latney, supra.*

The dissent's attempt to distinguish the *Latney* case and the
precedents on which it relied is unavailing. Rather, in our
opinion, this case, like *Latney*, is one in which there is a
"continuous chain of circumstantial evidence strongly connect-
ing the defendant directly to the crimes charged." *Com-
monwealth* v. *Latney*, 44 Mass. App. Ct. at 426.

As we have noted, the defendant was indicted *and tried jointly*
for two sets of crimes.[5] Therefore, the evidence that unfolded at
trial concerning the later Douglas scene (described in further
detail in part 1.b, *infra*) — which was admitted substantively
and for all purposes in the joint trial — could be considered by
the judge as providing linkage circumstantially tying the
defendant back as a perpetrator of the Oakham breaking and
entering. Indeed, the joint trial evidence reflected a commonal-
ity of manner and means — the first incident involved a break-
ing and entering; the second, possession of burglarious tools to
be used in a breaking and entering, both in a State park, and
both planned for a time when park rangers were not out and
about, i.e., during a weekend (Oakham) and late at night
(Douglas). Both crimes exhibited distinct similarities of execu-
tion: in the Oakham incident, an actual forced entry into a State
park building, in which the door was pried open; in the Douglas
incident, the possession of the wherewithal by means of
burglarious tools to force entry into another State park building.
The prybar and screwdrivers seized in Douglas (see part 1.b and
note 8, *infra*) would also have been handy tools for the Oakham
break-in. Furthermore, the defendant's actions at the Douglas
scene manifested "peculiarities" (the targeting of State parks)
and "occur[ed] in a context fraught with suspicion," *Com-
monwealth* v. *Kirkpatrick*, 26 Mass. App. Ct. 595, 596, 602
(1988), which, when viewed through the lens of the camcorder,
provided additional circumstantial evidence of the defendant's

---

[5]These six indictments were returned on the same day, under the same
docket number.

involvement in the similarly peculiar targeting of the Oakham State Park building.

When the full trial evidence concerning both State park burglarious affairs is welded to the defendant's possession of, and knowledge of, the stolen camcorder, there is, we conclude, sufficiently strong circumstantial evidence, with reasonable inferences, to prove that the defendant was a perpetrator of the Oakham break-in. In this evidentiary calculus, to be borne in mind is that, "[i]n reviewing the denial of a motion for a required finding of not guilty, we consider whether the evidence, in the light most favorable to the Commonwealth, is sufficient to permit the jury to infer the existence of the essential elements of the crime charged; and, whether the evidence and the inferences permitted to be drawn therefrom are sufficient to bring minds of ordinary intelligence and sagacity to the persuasion of guilt beyond a reasonable doubt." *Commonwealth* v. *Donovan,* 395 Mass. 20, 25 (1985) (quotation marks and citations omitted). Moreover, in these determinations, it is settled that "[c]onvictions may rest entirely or mainly on circumstantial evidence . . . ." *Commonwealth* v. *Walter,* 10 Mass. App. Ct. 255, 257 (1980). The motion for a required finding of not guilty on the indictment for breaking and entering the Oakham facility was properly denied.[6]

b. *Douglas State Park incident.* The defendant also argues

___

[6]As previously noted, the convictions for malicious destruction of property were placed on file. Generally, such convictions are not before us for review on appeal. See *Commonwealth* v. *Delgado,* 367 Mass. 432, 438 (1975). We note that the elements of malicious destruction differ significantly from those for breaking and entering. See generally *Commonwealth* v. *Redmond,* 53 Mass. App. Ct. 1, 3-8 (2001). Hence, while the defendant's possession of the stolen camcorder, with other circumstantial evidence, is sufficient to establish the elements of breaking and entry as to Oakham, that does not resolve, and is not outcome determinative with respect to, the malicious destruction offenses at Oakham. Contrast *Commonwealth* v. *Doe,* 8 Mass. App. Ct. 297, 298 n.1 (1979) (issues largely common to all the indictments). Therefore, we do not consider whether the evidence was sufficient to support a conviction on indictment number 00-0367-3, for malicious destruction of property, to wit: doors and cabinets.

However, on indictment number 00-0367-2, for malicious destruction of radios at Oakham, absolutely no evidence of damaged radios from the Oakham site was introduced at trial. Although, "[o]rdinarily, we do not consider appeals from indictments placed on file, . . . in the interest of efficiency and in a suitable case we may choose to do so. See *Commonwealth* v. *Bianco,* 388

that the evidence was insufficient to sustain his convictions of possession of burglarious tools and of attempt to commit a crime, the charges arising from his early morning foray into Douglas State Park. We affirm the judgment on the conviction of possession of burglarious tools. The indictment for attempt to commit a crime was placed on file. Because that conviction is not properly before us, and the elements of that offense, and hence the issues, are not the same as for the possession of burglarious tools offense, we do not consider the conviction on the attempt indictment, there being no exceptional circumstance. See and compare *Commonwealth* v. *Prashaw*, 57 Mass. App. Ct. 19, 27 (2003). See note 6, *supra.*

The evidence showed that anyone entering Douglas State Park would have seen signs that indicated the park closed at 8:00 P.M. The evidence further showed that, despite this warning, the defendant and Michael Dreslinski had entered the park in a pickup truck and, by about 1:00 A.M., had parked by a fence, near the area leading to the boat ramp, in the rear of the park, and left the vehicle. Police officers checking the area looked inside the truck and saw a police duty belt, a radio, a badge, and a flashlight. They then began to search the woods in the immediate area looking for the occupants of the truck. Apparently seeing the lights from police cruisers, the defendant

Mass. 358, 364-365 (1983)." *Commonwealth* v. *Chappee*, 397 Mass. 508, 523 (1986). *Commonwealth* v. *Freeman*, 29 Mass. App. Ct. 635, 636 n.1 (1990). See *Commonwealth* v. *Prashaw*, 57 Mass. App. Ct. 19, 27 (2003) (general rule is subject to qualification in cases that present "exceptional circumstances"). Here, the lack of "any evidence at all" renders the "conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment." *Thompson* v. *Louisville*, 362 U.S. 199, 199, 206 (1960). Cf. *Commonwealth* v. *Palladino*, 358 Mass. 28, 31 (1970) (conviction on indictment that charges no crime would be denial of due process). We therefore set aside the guilty finding on that indictment and order judgment to be entered for the defendant. Cf. *Commonwealth* v. *Chappee*, 397 Mass. at 523 (lesser included offense duplicative; court dismissed indictment for that offense even though indictment had been placed on file).

The defendant also requests that we order the Superior Court docket to be corrected to reflect that on indictment number 00-0367-3, for malicious destruction of property, to wit: doors and cabinets, the defendant was convicted of the lesser included offense of damage to property of a value of less than $250. The defendant's request to correct the docket and other records on this offense may be made in the Superior Court.

and Dreslinski returned to the vehicle and left the park. Minutes later they were stopped.

When the police looked into the vehicle after stopping it, they saw several items in the truck that had not been there when they had first looked inside the vehicle. Those items included two screwdrivers, two sets of black gloves, and a black ski mask on the front seat.[7] The fact that the screwdrivers, mask, and gloves had not been in the vehicle when the police first looked in it while it was unoccupied, but were on the seat after the defendant and Dreslinski returned to it, supported an inference that the defendant and Dreslinski had the items with them outside the truck and intended to use them. It fairly could be inferred that the two men had the gloves and ski mask with them because they did not want to be identified or leave fingerprints in relation to their activities in the park at that late hour and that they intended to use the screwdrivers to break into a building. Compare *Commonwealth* v. *Phong Thu Ly*, 19 Mass. App. Ct. 901, 901 (1984) (gloves were probative of an intent to conceal fingerprints, which, in turn, was probative of an intent to commit a robbery). In addition, two Mag flashlights were found in the front seat with markings that indicated they were the property of "Erving State Forest." Without any plausible explanation for legitimately possessing the flashlights, the discovery suggested a possible involvement in a theft from another State park and thus also supported an inference that the two suspects intended to use the tools to assist in a nighttime break-in of the park buildings. The fact that the screwdrivers were found on the seat of the truck where the defendant was seated as a passenger warranted the reasonable inference that he, along with Dreslinski, was in constructive possession of the screwdrivers. See *Commonwealth* v. *Jones*, 355 Mass. 170, 172, 176-177 (1969).[8]

In sum, the evidence was sufficient to show that Dreslinski

---

[7]In addition, the police, unable to locate the items they had seen upon their first inspection of the truck, spoke to the suspects and, as a result of that conversation, discovered a small compartment in the vehicle; in the compartment were a radio, with its identifying marks obscured by scratches, and handcuffs and a badge.

[8]Following questioning of Dreslinski at the police station, the police returned to the park and found a prybar under a rock in the beach area.

and the defendant (1) jointly possessed the screwdrivers found on the front seat of the truck in which the defendant was a passenger when the police stopped the vehicle (2) with the intent to use them to commit a breaking and entering. The evidence was thus sufficient to support the conviction of possession of burglarious tools.

2. *Motion to suppress.* On appeal, the defendant argues that the motion judge erred in denying his pretrial motion to suppress. According to the defendant, the police did not have sufficient information to stop the vehicle in which he was traveling, to order him to exit that vehicle, or to search the vehicle. In each instance the defendant is incorrect.

a. *The stop.* Contrary to the defendant's claim on appeal, the testimony at the motion hearing showed that there were signs at the gates leading to the boat ramp area, where the truck was parked, stating that the park closed at 8:00 P.M., and, in fact, the truck was parked near such a sign. Since the police observed the truck at 1 A.M., they had at a minimum a reasonable suspicion — if not probable cause — to believe that the occupants of the vehicle were trespassing on park property.[9] See *Commonwealth* v. *Petrillo,* 399 Mass. 487, 487 & n.1, 489-490 (1987). Moreover, the area was one that the police regularly patrolled because of the frequency with which trespassers were found there, as well as individuals engaged in other illegal activities, from fishing without a license to narcotic use. The discovery of the truck in that area long after the park had closed, combined with police observations of a police duty belt, handcuffs, and a portable radio on the front seat of the truck, provided the police with a reasonable suspicion that a crime was being committed, had been committed, or was about to be committed. *Commonwealth* v. *Silva,* 366 Mass. 402, 405 (1974). This suspicion was bolstered when the police ran the license plate number through the police computer and were provided with information that the registered owner had a criminal

---

[9]When the defendant was arrested, he was charged with, among other crimes, trespassing and impersonating a police officer. See G. L. c. 21, § 6C.

record.[10] The motion judge properly concluded that these facts established that the police had a reasonable suspicion that justified stopping the motor vehicle to investigate.

b. *The exit order.* As soon as the truck stopped, the police ordered the occupants out of the vehicle, pat frisked them, handcuffed them, and placed each of the two suspects in separate cruisers. Given Officer Glynn's earlier observation of a police duty belt on the front seat of the truck, the motion judge properly could conclude that it was "reasonable for the officers to be fearful that a gun was somehow associated with [that] belt," and that, therefore, the police were "justified in ordering the [suspects] to exit their vehicle" so that they could conduct a search based on their safety concerns.[11] See *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 664 (1999) ("[I]t does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns . . ."); *Commonwealth* v. *Torres*, 433 Mass. 669, 673 (2001).

c. *The search.* Finally, the defendant argues, somewhat confusingly, that the search of the truck was improper because it was conducted without probable cause. Because, as the motion judge found, the police were justified in conducting a search for safety, an examination of the interior of the vehicle for weapons was proper as part of such a search. See, e.g., *Commonwealth* v. *Jimenez*, 438 Mass. 213, 230 (2002).

When the police looked into the interior of the vehicle and discovered that the items Officer Glynn had seen in the truck earlier while it was parked, namely, the portable radio and the handcuffs, were missing, Officer Glynn, after ensuring that Miranda warnings had been given to each suspect, asked each one where the items were. Although the defendant disputes the judge's findings as to precisely how Officer Glynn was directed

[10]Although the information pertaining to the owner's criminal record turned out later to be incorrect in part, the police at the scene were warranted in acting on the information provided to them at the time by their department. See *Commonwealth* v. *Fuller*, 30 Mass. App. Ct. 927, 929 (1991).

[11]The judge also based his conclusion in part on his finding that the occupants of the truck "did not respond immediately to Officer Glynn when she illuminated their truck with the spotlight from her cruiser as they drove away from the park."

to the small compartment under the dashboard,[12] there is no dispute that after her contact with Dreslinski, Glynn found the compartment and recovered from it a portable radio, a badge, and handcuffs. According to testimony at the motion to suppress hearing, the radio had markings on the back of it indicating that it belonged to "Erving State Forest."[13] Two flashlights with the same markings of ownership were also uncovered in the search of the truck.

The judge found that "the defendants consented to the search by informing the police of the location of the items" and that, therefore, the "seizure of the items from the compartment was lawful." There was no error. Because Dreslinski, after having been advised of his Miranda warnings, directed Officer Glynn to the hidden compartment on the passenger side of the vehicle, the judge's conclusion that Dreslinski's communication served as consent to search the compartment was proper. The defendant argues that this conclusion is flawed because consent to search was never explicitly obtained. The defendant fails to recognize, however, that Dreslinski's consent to search may be inferred from his communication with Glynn. Whether he showed Glynn the compartment or told her about it, his conduct constituted consent because it directed her to the location under the dashboard in which the contraband was located. See *Commonwealth* v. *Voisine*, 414 Mass. 772, 783 (1993) (fact that a person communicated her consent by pointing in the direction of the bedroom where the defendant was hiding, rather than by speaking, is of no effect); *Commonwealth* v. *Berry*, 420 Mass. 95, 104 (1995) (consent may be inferred from person's conduct). Deciding as we do, it is not necessary to discuss whether the search was justified as one incident to a valid arrest, see *Commonwealth* v. *Blevines*, 438 Mass. 604, 608 (2003), and G. L. c. 276, § 1, because the police had probable cause to arrest the

---

[12]The judge found that Dreslinski "showed the officer a hidden compartment on the passenger side of the truck . . . ." Glynn's testimony suggested that Dreslinski merely told her where the compartment was, rather than showing it to her. The difference is immaterial, as the result under either scenario supports the inference that Dreslinski consented to the search. See discussion *infra.*

[13]The evidence that the radio was marked "Erving State Forest" was not presented at trial.

defendant for trespass when they stopped the truck. See *Commonwealth* v. *Petrillo*, 399 Mass. at 489-490.

On the indictments for breaking and entering in the daytime and for possession of burglarious tools, the judgments are affirmed. On the indictment charging malicious destruction of property, to wit: radios, at Oakham on December 5, 1999, the finding of guilt is set aside and judgment is to enter for the defendant.

*So ordered.*

BROWN, J. (dissenting in part, with whom Mason, J., joins). Although I agree that the evidence at trial was sufficient to show that the camcorder found in the defendant's possession was the camcorder taken from the Metropolitan District Commission building in Oakham State Park, and although possession of recently stolen property can be relied on as evidence that the possessor stole the property, see *Commonwealth* v. *Grace*, 265 Mass. 119, 124 (1928); *Commonwealth* v. *Latney*, 44 Mass. App. Ct. 423, 425 (1998), here the lack of any other evidence linking the defendant to the Oakham site renders that inference insufficient under the *Latimore* standard to establish beyond a reasonable doubt that the defendant was guilty of the breaking and entering of that building. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). For the same reason, the evidence is insufficient to establish guilt on the two indictments charging malicious destruction of property at that site.[1]

In *Commonwealth* v. *Latney*, 44 Mass. App. Ct. at 425, other evidence in addition to the possession of stolen property (the defendant was captured near the burgled house, the stolen beer

---

[1]Although the two indictments for malicious destruction of property were placed on file and ordinarily would not be considered on appeal, the error complained of here affects these charges. I would, therefore, set aside the guilty findings and enter judgment for the defendant on both indictments for malicious destruction of property as well as on the indictment for breaking and entering. I agree with the majority that on the indictment charging malicious destruction of radios at the Oakham facility the guilty finding should be set aside and judgment entered for the defendant because no evidence of damaged radios was presented at trial, i.e., no evidence at all was presented at trial on that charge.

was still cold, and the defendant was in possession of every one of the stolen items) linked the defendant directly to the burglary and rendered unlikely contrary inferences (e.g., if he had stumbled on the beer on the street, it would have been warm from the sun). In contrast, here no evidence other than the defendant's possession of the stolen camcorder linked him to the Oakham site. The other evidence pointed to by the majority is that, one week after the break-in in Oakham, he and Dreslinski were found after hours in another State park in a truck with two screwdrivers on the front seat, in suspicious circumstances. I agree that the evidence was sufficient to support the inference that the defendant (and Dreslinski) intended to use the screwdrivers to commit a burglary and therefore was sufficient to support the defendant's conviction of possession of burglarious implements. However, to infer from this that the defendant committed the breaking and entering at Oakham involves an untoward "piling [of] inference upon inference." *Commonwealth* v. *Ferguson*, 384 Mass. 13, 18 (1981). See *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988). This evidence is far more attenuated than that in *Latney*; nor, in contrast to *Latney*, do the inferences render contrary inferences as to who might have committed the Oakham breaking and entering significantly less likely — for example, either the defendant *or* Dreslinski (either alone or with another) might have committed the Oakham breaking and entering, and if it was Dreslinski, he could have sold (or otherwise passed along) the camcorder to the defendant; also possible is that another person or persons committed the breaking and entering at Oakham and sold the camcorder to the defendant (perhaps even giving him the idea of attempting to break into State park buildings). As for similarity of method or means, the only similarity is the venue — State parks. There is nothing distinctive about the means of the breaking and entering that is shown to link the defendant, as opposed to someone else, to it.[2] "Convictions may rest entirely or mainly on circumstantial evidence, . . . but 'no essential ele-

---

[2] The supervisor at the Oakham facility testified that the "door [to that building], the area around the doorknob and where the locking device was damaged. It looked like — I couldn't tell if it was an axe or a hammer, some object like that . . . was used to smash at it until the door eventually opened." When stopped in the State park in Douglas, the defendant and Dreslinski were

ment of the crime may rest in surmise, conjecture, or guesswork.' *Commonwealth* v. *Kelley*, 359 Mass. 77, 88 (1971)." *Commonwealth* v. *Walter*, 10 Mass. App. Ct. 255, 257 (1980). In sum, there is not sufficient evidence to prove beyond a reasonable doubt the defendant's guilt of the Oakham breaking and entering.

---

found with screwdrivers, and a prybar was later (after the police questioned Dreslinski) found under a rock on the beach. There was no testimony that the marks on the door to the Oakham building matched the prybar or screwdrivers. Contrast *Commonwealth* v. *Grace*, 265 Mass. 119, 120 (1928).