COMMONWEALTH *vs.* JONATHAN DASILVA.

No. 04-P-1437.

Suffolk. October 18, 2005. - June 20, 2006.

Present: ARMSTRONG, C.J., BERRY, & TRAINOR, JJ.

*Controlled Substances. Constitutional Law,* Investigatory stop. *Search and Seizure,* Reasonable suspicion. *Evidence,* Previous testimony of unavailable witness. *Practice, Criminal,* Witness. *Witness,* Unavailability.

A Superior Court judge properly denied a criminal defendant's motion to suppress evidence of marijuana found on the defendant, where the police stop that led to the discovery of the marijuana in his possession was supported by reasonable suspicion that he was committing a crime, in light of an anonymous tip, independent corroboration by police officers of the defendant's identity, and their observation of his actions. [558-561] BERRY, J., concurring.

A Superior Court judge did not err in declining to allow in evidence the prior sworn testimony of an unavailable witness, where the judge determined that the testimony was not relevant. [561-562]

INDICTMENT found and returned in the Superior Court Department on June 18, 2002.

A pretrial motion to suppress evidence was heard by *Barbara J. Rouse,* J., and the case was tried before *Margaret R. Hinkle,* J.

*Jessica Fried,* Committee for Public Counsel Services, for the defendant.

*Timothy M. Pomarole,* Assistant District Attorney, for the Commonwealth.

TRAINOR, J. The defendant, Jonathan Dasilva, was convicted of possession of a class D substance and appeals on two grounds: (1) that the police stop that led to the discovery of marijuana in his possession was not supported by probable cause or reasonable suspicion; and (2) that it was error for the motion judge not to admit the prior sworn testimony of a wit-

ness who testified at the defendant's probation surrender hearing and was unavailable at the time of the motion to suppress hearing. We affirm.

*Background.* A hearing was held on a motion to suppress the marijuana police had found on the defendant. Following the hearing, the motion judge orally stated her findings of fact, rulings of law, and order denying the motion. In her findings, the motion judge determined that there was probable cause[1] to stop the defendant based on the facts known by the police, whether or not the tip received from an anonymous informant was considered. The motion judge found the following relevant facts, which were supported by the evidence presented at the motion hearing. See *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004) (motion judge's findings of fact accepted absent clear error); *Commonwealth* v. *Vesna San*, 63 Mass. App. Ct. 189, 190 (2005) (same).

On May 5, 2002, Officers James Sheehan and Jami Pietroski of the Boston Police department, both with less than eight months of experience as police officers, were informed immediately following roll call by their patrol supervisor, Sergeant Gerard Bailey, that he had received information that the defendant and his brother, Bernardo Dasilva, were in possession of firearms and narcotics at 121 George Street in the Roxbury section of Boston, and that one was wearing a white T-shirt and blue jeans and the other was wearing a red T-shirt and blue jeans. The officers were not informed as to the source of the information relayed by Sergeant Bailey.[2]

Both officers had met and spoken to the defendant on several occasions, and were aware that the defendant was between eighteen and nineteen years old and did not live on George Street. In addition, Officer Sheehan was aware that the defendant had pending court cases on charges of assault with intent to murder and firearm possession. Immediately after

---

[1]Although the motion judge used the probable cause standard, the appropriate standard in this case is reasonable suspicion.

[2]At the motion hearing, the parties stipulated that had Sergeant Bailey testified, he would have stated that on May 5, 2002, prior to roll call, he received the information he disclosed to the officers from a Boston police detective, who, in turn, had received this information from "a third party." There was no other information available about the informant.

receiving the information from Sergeant Bailey, the officers, who were in uniform and driving a marked police car, went to 121 George Street, which appeared to be a multi-family dwelling. At no time did they activate their sirens or cruiser lights. The officers were aware, based on information received from other officers, that this neighborhood was a "high crime" area.

Approaching the address, the officers saw the defendant, who was wearing a white T-shirt, blue jeans, and a black jacket, standing at the base of the steps leading to the dwelling and another individual, wearing a red T-shirt and blue jeans, walking up the steps to the entranceway.[3] Before the cruiser stopped, the defendant looked at the cruiser and then made a "definite defined movement" with his right hand toward his waistband. The defendant turned right and ran up the stairs with his right hand remaining at his waistband. Based on the officers' training and experience as police officers, they believed that the defendant was carrying a gun in the waistband of his pants.

When the cruiser stopped, Officer Sheehan exited, shouted for the defendant to stop, and chased the defendant through the first floor of the dwelling to a small enclosed courtyard. As the defendant entered the courtyard, he moved his right hand up from his waistband, making a throwing motion over the courtyard wall toward the dwelling next door. The defendant was apprehended in the courtyard, pat frisked, and found possessing a plastic bag containing what was subsequently determined to be marijuana. Officer Sheehan looked over the courtyard wall where the defendant had made the throwing motion and observed a silver-colored revolver on the ground near the wall. The revolver was subsequently retrieved and found to be loaded with six rounds of ammunition.

*Motion to suppress.* The defendant argues that the Commonwealth failed to establish justification for his seizure by police, especially because the officers' presence at the scene was the result of an anonymous tip relayed to them third-hand.[4]

---

[3]While accurately meeting the informant's description, this person was not the defendant's brother.

[4]There is no dispute that the defendant was seized when Officer Sheehan first began pursuing him and ordered him to stop. See *Commonwealth* v.

In fact, case law demonstrates that the circumstances surrounding the defendant's seizure by police were adequate to support reasonable suspicion. The anonymous tip contained details that, when confirmed by independent police observation, indicated reliability, *and* there were other factors the police could legitimately consider that gave rise to reasonable suspicion that the defendant was committing a crime. See *United States* v. *Bold,* 19 F.3d 99, 102 (2nd Cir. 1994) ("Reasonable suspicion depends upon both the content of the information possessed and its degree of reliability").

As an initial matter, the presence of police officers at the location from which they first observed the defendant was clearly permissible, without regard to the provenance of the tip that brought them there. "Police officers have a duty to investigate citizen reports of criminal activity, particularly if the conduct implicates the safety of the public . . . ." *Commonwealth* v. *Davis,* 63 Mass. App. Ct. 88, 90 (2005), quoting from *Commonwealth* v. *Fortune,* 57 Mass. App. Ct. 923, 924 (2003). See *Commonwealth* v. *Stoute,* 422 Mass. 782, 790 (1996) ("When a tip . . . concerns the possession of a firearm, it deserves the immediate attention of law enforcement officials"). The officers were on a public way responding to information concerning weapons and drug possession, and when they saw the defendant, he was in plain view.

We must also consider what value, if any, the anonymous tip can have in the determination of reasonable suspicion. "Where police conduct an investigatory stop based on information gleaned from an anonymous tip, courts assess the sufficiency of the information in terms of the reliability of the informant and his or her basis of knowledge." *Commonwealth* v. *Walker,* 443 Mass. 867, 872, cert. denied, 126 S. Ct. 662 (2005). "Independent police corroboration may make up for deficiencies in one or both of these factors." *Commonwealth* v. *Lyons,* 409 Mass. 16, 19 (1990).

The anonymous tip, when combined with independent police

*Stoute,* 422 Mass. 782, 783 (1996) (person seized under art. 14 of the Massachusetts Declaration of Rights when police engage in pursuit intended to stop and detain person).

corroboration, gave the officers some reason to believe the defendant was then committing a crime.[5] At least one important detail that the police were able to corroborate from first-hand observation, however, was not obvious to a casual observer: the defendant's identity, which the officers knew before receiving the tip. Compare *id.* at 21-22. Additionally, the defendant's reaction upon seeing the police — moving his hand to his waistband and fleeing — tended to suggest that the informant's allegation that the defendant was carrying a gun was grounded in personal knowledge. The police were also able to confirm the more obvious details of the tip with a fair degree of accuracy. The location where the defendant and the second individual were found and the clothes they were wearing were accurately detailed by the tip suggesting that the informant's information was very current.

In this case, the officers could also consider, independently, the defendant's actions upon seeing them. After looking directly at the marked police cruiser, the defendant moved his right hand toward his waistband, fled up the stairs of the building where he was standing, and continued to flee even after Officer Sheehan ordered him to stop. Flight from police, while not enough to create reasonable suspicion by itself, may be considered with other factors. *Commonwealth* v. *Rupp*, 57 Mass. App. Ct. 377, 382 (2003). See *Commonwealth* v. *Wren*, 391 Mass. 705, 708 n.2 (1984); *Commonwealth* v. *Grandison*, 433 Mass. 135, 139-140 (2001). More importantly, the defendant made a definite movement of his hand toward his waistband,

---

[5]We need not, and do not hold, however, that the tip alone created reasonable suspicion sufficient to justify the stop. Nor do we hold that the tip was so unreliable as to require us to ignore it. Rather, in light of the particular facts of this case, we consider the tip for what reliability it may have possessed, in conjunction with the officers' observations of the defendant's actions made from a lawful vantage point on a public way, and conclude that it was not error for the motion judge to find reasonable suspicion to support the initial order to stop.

That the motion judge found that reasonable suspicion to stop the defendant existed without use of the anonymous tip is of no consequence, for we may affirm on any basis evident from the record. See *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997).

which action the officers knew from their training to be indicative of the presence of a gun.

The officers were also entitled to consider their personal knowledge of the defendant, including the fact that he had a pending court case involving charges of firearm possession and armed assault with intent to murder. In several cases, this court has allowed police knowledge of a person's arrest record or unspecified "criminal record" to be considered in a reasonable suspicion evaluation. See, e.g., *Commonwealth* v. *Nutile*, 31 Mass. App. Ct. 614, 618 (1991) (based on knowledge of prior arrests, officers "knew that the defendant had possessed firearms in the past, and they were entitled to protect themselves"); *Commonwealth* v. *Calderon*, 43 Mass. App. Ct. 228, 230-231 (1997) (knowledge by police of defendant's long criminal history considered in reasonable suspicion determination); *Commonwealth* v. *Rousseau*, 61 Mass. App. Ct. 144, 152-153 (2004) (reasonable suspicion of trespassing by occupants of a parked car "was bolstered when the police ran the license plate number through the police computer and were provided with information that the registered owner had a criminal record"). See also *Roe* v. *Attorney Gen.*, 434 Mass. 418, 442 (2001) ("A person's prior criminal record is a legitimate factor to consider in determining whether there is reasonable suspicion for a stop or probable cause for a search or an arrest"); *Commonwealth* v. *Gentile*, 437 Mass. 569, 574-575 (2002) (criminal record considered in determining that reasonable suspicion existed). Compare *Commonwealth* v. *Hooker*, 52 Mass. App. Ct. 683, 687 (2001) (knowledge of prior arrests that did not involve firearms or other weapons was insufficient to create a reasonable apprehension of danger by police).

In light of all the factors enumerated above, reasonable suspicion to stop the defendant existed. The motion judge's denial of the motion to suppress was not erroneous.

*Admission of prior sworn testimony.* The defendant argues that he should have been allowed to introduce the probation surrender hearing testimony of Sandra Barros (a resident of the building where the events took place) substantively and in order to impeach the officers. We disagree. Here, Barros's testimony concerned only events occurring *after* the defendant was stopped

and was equivocal at best. The motion judge reviewed the testimony and essentially determined that it was not relevant and that Barros would require further examination by both parties.[6] We discern no reason to disturb that ruling. See *Wyatt, petitioner*, 428 Mass. 347, 355 (1998) ("The issue of relevancy is a matter on which the opinion of the trial judge will be accepted on review except for palpable error" [citations omitted]).

For the foregoing reasons, we hold that the rulings of the motion judge were not erroneous. The judgment is therefore affirmed.

*So ordered.*

BERRY, J. (concurring). I agree that the motion to suppress should not have been allowed, but I do so for reasons different from those adopted in the majority opinion. Specifically, I do not believe that the tipster, who was totally unknown, and as to whom no verifying background was provided, met the standards of reliability or basis of knowledge and veracity prongs required by the *Aguilar/Spinelli* duality, see *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964); *Spinelli* v. *United States*, 393 U.S. 410, 415-416 (1969), as continuously endorsed as a matter of Massachusetts constitutional law. See *Commonwealth* v. *Upton*, 394 Mass. 363, 373-377 (1985). My divergence with the majority approach arises because, as the motion judge found and as conceded by the Commonwealth, neither the officers nor Sergeant Bailey knew the source of the information and only Sergeant Bailey knew that it had been received by a Boston police detective from a third party. Therefore, I do not accept,

---

[6] In her oral findings, the motion judge listed various factors why further testimony of Barros would be required, including Barros's marriage to the defendant and her criminal difficulties, and stated that such further testimony would also provide the judge with the opportunity to evaluate Barros's demeanor.

Based on the motion judge's ruling, we need not reach the question whether the prior proceeding in which Barros gave her testimony was similar enough to the suppression hearing to give the Commonwealth adequate motivation to cross-examine her.

as the majority does, that the anonymous tip can be added to a probable cause determination (or, I would suggest, more appropriately a reasonable suspicion determination) that independent police corroboration could compensate for the informant's deficiencies.

I concur in the affirmance holding that suppression was not warranted because, in my view, the stop of the defendant was constitutionally supportable based upon the series of events that transpired when the police encountered the defendant, including the police officers' identification of the defendant based on their familiarity with him in prior involvements (including one officer's knowledge of the defendant's outstanding firearm case), and the defendant's objectively suspicious actions upon seeing the police approach in the marked cruiser, e.g., the defendant's furtive gesture — a "definite defined motion," described as either a clutch or a grab of his hand moving to his waistband — and the defendant fleeing up the stairs of the building, where he had been standing when the police cruiser approached. These actions occurred before the police ordered the defendant to stop and engaged in pursuit of him. See *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996). Later happenings, including the defendant's throwing of the firearm over the wall, would, in turn, not be subject to suppression because, at the point of original pursuit, there was reasonable suspicion. *Ibid.* Accordingly, I concur in the result but would not rely on the flawed informant information. Instead, I would rest denial of the motion to suppress on these events taking place at the initial point of police presence on the scene, and the defendant's ensuing objectively suspicious actions.