NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1793                                        Appeals Court


                COMMONWEALTH  vs.  ANTOINE KEENE.



            No. 14-P-1793.     March 28, 2016.


Firearms.  Constitutional Law, Search and seizure, Reasonable
    suspicion.  Search and Seizure, Reasonable suspicion.
    Practice, Criminal, Motion to suppress.


     This case began when two men, one of whom is the defendant,
ran out of a nightclub in Stoughton at 12:52 A.M. on April 21,
2013.  When stopped by Stoughton police Officer Mark Baldner,
they said they were leaving the club because there was a fight
inside, which was true.  The officer told them they could leave,
and saw them get into a Nissan Altima vehicle, the license plate
number of which he wrote down.  He did not see them again.

     Approximately ten minutes later there was a shooting
outside the nightclub.  The officer told Stoughton police
dispatch to issue a "be on the lookout" (BOLO) bulletin for the
Altima, requesting that it be "stop[ped] and h[e]ld."

     Although the defendant and his companion had left the scene
before the shooting occurred, the Boston police department
issued a broadcast for units to be on the lookout for a Nissan
Altima with the license plate number provided by Officer
Baldner, which was described as "coming back to 130 Cummings
Highway, [Boston] containing two occupants" and "last seen
heading northbound on route 138."  The broadcast directed units
to "stop and hold for the Stoughton [police department]
regarding a shooting" and, for reasons that are unexplained in
the record, added that the occupants "should be considered armed
and dangerous."

Boston police officers saw the Altima on Radcliffe Street in Mattapan. They stopped the car and approached it with guns drawn, ordering its occupants to keep their hands up and make no sudden movements. The officers secured the defendant, who had been driving, and put him in a police car with his hands cuffed behind his back.

Police searched the car for a gun without success. An officer from the K9 unit then conducted a more thorough search, during which he lifted the armrest of the driver's side door, which seemed to be loose and not sealed as designed. He saw a cloth bag and the baseplate of firearm magazine. He then closed the armrest and put his K9 partner inside the car, and the dog alerted to the driver's side door armrest. Two firearms were recovered.

A Suffolk County grand jury returned indictments against the defendant, and the defendant filed a motion to suppress. A judge of the Superior Court allowed that motion, and the Commonwealth filed this interlocutory appeal.

The Commonwealth does not contend that the Stoughton police had a reasonable basis based upon articulable facts to believe that the defendant or his companion had committed, was committing, or was about to commit a crime, see Terry v. Ohio, 392 U.S. 1, 21 (1968), let alone to believe that they were armed and dangerous, see Arizona v. Johnson, 555 U.S. 323, 326-327 (2009). They left the scene of the shooting ten minutes before the shooting took place, and there is no evidence in the record that they had anything to do with the shooting or that they were seen with any firearms at the nightclub. The Commonwealth argues only that the evidence should not have been suppressed because the Boston police officers were acting reasonably in response to a BOLO radio report that described the defendant and his companion as "considered armed and dangerous."

The Commonwealth misperceives the nature of the constitutional inquiry. Of course the Boston police officers on the scene responded appropriately to the BOLO. Indeed, we may assume that their response was reasonable given the incorrect information they had been given.

But the question whether there was a constitutional violation, and whether the Fourth Amendment requires the suppression of the evidence seized, requires an examination not only of the actions of the Boston police but of the Stoughton police as well, and not only of the police officers, but of the

police dispatchers.  In <u>United States</u> v. <u>Hensley</u>, 469 U.S. 221 (1985), the Supreme Court addressed the question whether an officer of a police department may make a <u>Terry</u>-stop[1] in reliance on a "wanted flier" issued by a neighboring police department indicating that the defendant was suspected of robbery.  The Court upheld such a stop provided, among other things, that "the police who <u>issued</u> the flier or bulletin possessed a reasonable suspicion justifying a stop."  <u>Id</u>. at 233.  "Of course, this requirement is equally applicable where information is transmitted between officers by radio rather than by a wanted flier . . ."  <u>Commonwealth</u> v. <u>Fraser</u>, 410 Mass. 541, 546 (1991).  Here, where the Stoughton police department was not aware of any articulable facts that supported a reasonable suspicion sufficient to warrant a stop of the defendant's vehicle, that stop violated the Fourth Amendment, and the evidence seized from the vehicle must be suppressed.

In light of this conclusion, we need not determine whether, as the defendant argues, the scope of the Commonwealth's search would have been permissible only on the basis of probable cause.

<u>Order allowing motion to</u><br><u>suppress affirmed</u>.

<u>Teresa K. Anderson</u>, Assistant District Attorney, for the Commonwealth.
<u>Rebecca Kiley</u> for the defendant.

---

[1] See <u>Terry</u> v. <u>Ohio</u>, <u>supra</u>.